UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF COURT
2021 MAR -8 PM 4: 25
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

Center for Biological Diversity, *et al.*,

    Plaintiffs,

v.

U.S. Forest Service, *et al.*,

    Defendants.

Case No. 2:17-cv-372

Judge Michael H. Watson
Magistrate Judge Jolson

## OPINION AND ORDER

This Court previously found that Defendants United States Forest Service ("USFS") and Bureau of Land Management ("BLM," together "Agency Defendants") violated the National Environmental Policy Act ("NEPA") when they failed to take the requisite "hard look" at the impacts of fracking in Wayne National Forest ("WNF") prior to deciding to grant leases. ECF No. 110. Specifically, this Court found that:

> [A]t the decision-to-lease phase, USFS and BLM failed to take a hard look at the impacts of fracking in the WNF, including: (1) surface area disturbance, (2) cumulative impacts on the Indiana Bat and the Little Muskingum River, and (3) impacts on air quality.

*Id.* at 71.

The Court instructed the parties[1] to brief which remedies other than complete vacatur or mere remand were available and the appropriate test or

---

[1] Plaintiffs are four non-profit organizations: the Center for Biological Diversity ("the Center"), Heartwood, Ohio Environmental Council ("OEC"), and the Sierra Club (together, "Plaintiffs"). Intervenor Defendants are American Petroleum Institute ("API")

standard to apply. *Id.* at 71–72. Pursuant to that Opinion, the parties filed supplemental briefing as to the appropriate remedy.[2]

## I. BACKGROUND

The Court adopts and incorporates the facts and procedural history as discussed in its previous Opinion and Order, ECF No. 110. Any additional facts relevant to remedies will be addressed in the analysis below.

## II. ANALYSIS

### A. Whether to Apply *Allied-Signal*

The parties disagree as to the appropriate test to apply. Plaintiffs argue that under the Administrative Procedure Act ("APA") and Sixth Circuit precedent, the Court *must* vacate agency actions that violated NEPA. Pls.' Br. 3, ECF No. 111 (citing 5 U.S.C. § 706(2)(A) and *Ky. Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 407, 411 (6th Cir. 2013)); *see also Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831 (10th Cir. 2019) ("Vacatur of agency action is a common, and often appropriate form of injunctive relief granted by district courts." (internal citation omitted)).

---

and Independent Petroleum Association of America ("IPAA," together, "Intervenor Associations"), as well as Eclipse Resources I, LP ("Eclipse"), who has since undergone a name change, but will nevertheless still be referred to as Eclipse in this Opinion and Order. *See* ECF No. 113.

[2] Intervenor Associations filed two separate but identical briefs. *Compare* ECF Nos. 112 and 114. For efficiency's sake, the Court will refer to their arguments jointly as "Intervenor Associations" and cite only ECF No. 112.

Agency Defendants and Eclipse acknowledge that the default is to set aside unlawful agency actions, but they, along with Intervenor Associations, argue that this Court should adopt the vacatur exception test established in *Allied-Signal v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993), which permits remand without vacatur.[3] *Allied-Signal* held that "[a]n inadequately supported rule . . . need not necessarily be vacated." *Id.* at 150. Instead, the court can employ a two-factor balancing test which looks at "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed" to determine whether vacatur is appropriate. *Id.* at 150–51 (internal citation omitted). Neither factor is dispositive; rather, the "resolution of the question turns on the Court's assessment of the overall equities and practicality of the alternatives." *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015) (collecting cases).

Here, no party disputes that the "ordinary practice" in situations like this is "to vacate unlawful agency action." *Standing Rock Sioux Tribe v. U.S. Army Corps. of Eng'rs*, 985 F.3d 1032, 1050–51 (D.D.C. 2021). But the Court agrees with Intervenor Associations', Eclipse's, and Agency Defendants' arguments that

---

[3] The Intervenor Associations also argue that Plaintiffs' requested relief is akin to seeking a permanent injunction and that Plaintiffs have failed to meet their burden under that standard. However, they fail to explain how the *Allied-Signal* factors fit into the permanent injunction framework, and because all parties address Plaintiffs' arguments within the scope of *Allied-Signal*, the Court will likewise do so.

Plaintiffs overstate the binding nature of *Kentucky Riverkeepers* regarding mandatory vacatur. Although the Sixth Circuit Court of Appeals did invalidate a permit pursuant to § 706(2)(A), it did not dictate vacatur as the only permissible outcome. *See* 714 F.3d at 413.

Instead, this Court looks to the guidance of many other courts that have considered the value of implementing the *Allied-Signal* test when determining an appropriate remedy and finds it is likewise instructive in this case. *See e.g. Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (noting most other courts agree that the "remedy of remand without vacatur is within a reviewing court's equity powers under the APA" and applying the *Allied-Signal* test); Eclipse Resp. 9, ECF No. 113 (collecting cases that have adopted the *Allied-Signal* test); *see also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010) ("[W]hile we recognize that we are not bound by the law of other Circuits, this court has also routinely looked to the majority position of other Circuits in resolving undecided issues of law."). Although not dispositive of the issue, the Court is persuaded by the fact that most courts to examine the issue have likewise adopted the *Allied-Signal* test. Moreover, Plaintiffs do not point to any caselaw outright rejecting *Allied-Signal* or the Court's ability to fashion an equitable remedy narrower than vacatur. Accordingly, while recognizing that the default is vacatur, the Court will employ the *Allied-Signal* test to determine whether, in equity, complete vacatur is the most appropriate remedy.

Finally, under *Allied-Signal*, courts have found that the burden is on the party opposing vacatur "to show that compelling equities demand anything less than vacatur." *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1083 (D. Idaho 2020). Thus, the Court places the burden on Defendants to prove that vacatur is an inappropriate remedy.

### B. Application of *Allied-Signal*

Intervenor Associations, Eclipse, and Agency Defendants argue that vacatur is a drastic remedy, and that, in this case, a simple remand to the Agency Defendants to undergo the requisite "hard look" would be sufficient. Plaintiffs argue that the opposing parties are trying to make the exception the rule, and that, regardless, even under *Allied-Signal*, vacatur of the challenged decisions and corresponding leases is most in line with NEPA's overarching goal of meaningfully evaluating environmental impacts and alternatives *before* action is taken. Pls.' Br. 5–6, ECF No. 111.

#### 1. Seriousness of the deficiencies

The parties first disagree as to the seriousness of the deficiencies. Intervenor Associations, Eclipse, and Agency Defendants all contend that the inadequacies highlighted by the Court's previous Opinion and Order can be cured on remand. They further argue that in cases where the NEPA analysis was inadequate, as opposed to completely missing, remand without vacatur is the proper course of action because it is likely the NEPA violations can be corrected upon remand. *See* Eclipse Resp. 13–14, ECF No. 113; Agency Defs.'

Resp. 10, ECF No. 12; Int. Ass'n Resp. 7, ECF No. 112. Indeed, BLM's representative avers that he believes the deficiencies outlined by the Court can be cured by additional NEPA analysis on remand. *See* Bobo Decl. ¶ 7, ECF No. 115-1.

Plaintiffs argue the seriousness of the defect "should be measured by the effect the error has in contravening the purposes of the statute[s] in question," rather than assessing the seriousness based on the likelihood of curing defects on remand. Pls.' Br. 12, ECF No. 111 (quoting *W. Watersheds Project*, 441 F. Supp. 3d at 1083 (further citations omitted)). In Plaintiffs' view, because the purposes of NEPA require the agencies to fully consider the environmental impacts of fracking before deciding to lease parcels, vacatur of the leases is the only way to permit full and fair consideration of alternatives on remand. Pls.' Br. 14, ECF No. 111. Absent vacatur, Plaintiffs caution remanding with the leases remaining in place "could result in a *pro forma* exercise in support of a predetermined outcome." *Id.* at 6 (quotations and citation omitted).

The Court agrees with Plaintiffs that the purposes of NEPA were contravened when the Agencies failed to take the requisite "hard look" at certain impacts of fracking in WNF. The Court is also mindful of Plaintiffs' concern that keeping the leases in place on remand risks the Agency review becoming an exercise in futility with a predetermined outcome. However, the Court likewise acknowledges that this is not a situation in which the Agencies completely abandoned their duties under NEPA. Instead, the Court must consider the risks

vacatur poses to Agency Defendants and Intervenors, especially when there is a strong possibility that a properly supported NEPA review could reach the same result as before.

Thus, despite the serious concerns the Court has with some of the Agencies' review, the Court finds there is "a serious possibility that the [agency] will be able to substantiate its decision on remand" such that this factor weighs against complete vacatur." *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 98 (D.D.C. 2017); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 84 (D.D.C. 2019) (applying *Allied-Signal* and declining to vacate leases because "BLM's NEPA violation consists merely of a failure to fully discuss the environmental effects of those lease sales; nothing in the record indicates that on remand the agency will necessarily fail to justify its decisions to issue EAs or FONSIs.").

### 2. Disruptive consequences of vacatur

Intervenor Associations, Eclipse, and Agency Defendants likewise emphasize the economic impacts of vacatur and the practical difficulties of unwinding agency actions. Plaintiffs acknowledge that some disruption might occur but argue the purely economic consequences are insignificant and can be remedied with a refund. Pls.' Br. 15, ECF No. 111.

Intervenor Associations, Eclipse, and Agency Defendants first argue that the economic harms of vacatur would be disruptive and far reaching. Eclipse highlights the economic harms it might face, including loss of oil and gas

exploration investments of approximately $41,400,000 in WNF and surrounding privately owned areas. Rucker Decl. ¶¶ 9,12, 18, 20, ECF No. 113-1. Eclipse avers that it has taken steps, including partially drilling two wells and commenced well-site construction activities for eight other wells, such that a mere refund of its lease purchase would be insufficient. *See id.* at ¶ 20. Eclipse also argues the Court must consider not just the lessees' losses but also the future losses to leaseholders, private landowners adjacent to WNF, and the surrounding community at large. Eclipse Resp. 16–17, ECF No. 113.

Both Eclipse and Agency Defendants likewise highlight the economic losses to federal, state, and local governments if the leases must be refunded. Specifically, Agency Defendants indicate almost half of the payments BLM received went to the State of Ohio, which in turn, uses that money to fund schools, roads, and bridges. Bobo Decl. ¶¶ 6 ,8, ECF No. 115-1. Thus, refunding the leases, they argue, would result in an economic loss for the surrounding Ohio communities as well. *See e.g. Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1034 (D. Mont. 2006) (considering greater impacts to community).

Intervenor Associations echo many of the above arguments and point to not only the lessees' lost investments in bids and towards exploration, but also the fact that their bids have been unsealed, thereby revealing the lessees' bidding strategies to competitors, and in turn, harming their prospective chances of winning bids in the future and undermining trust in the greater bidding process.

Second, Intervenor Associations, Eclipse, and Agency Defendants argue that the practical difficulties of implementing vacatur would be equally disruptive. Agency Defendants contend that it is not as simple as just issuing checks for a refund. Instead, vacating the lease sales, returning funds, and rescinding the applications for permit to drill ("APD") would require them to go through the administrative process to cancel the leases, update the land and minerals record system, and process refunds, thereby diverting time and valuable resources away from other environmental programs. Bobo Decl. ¶ 8, ECF No. 115-1. Moreover, because almost half of the funds went to the state, it will be that much more difficult and time consuming to fully refund the leases. *Id.* Finally, Agency Defendants argue vacatur risks them exerting all this effort despite the possibility that once the requisite "hard look" is taken, the outcome could still be same. Agency Defendants would then have to go through the entire bidding process again, resulting in duplicative and wasted efforts.

Plaintiffs argue economic harms alone are not enough to prevent vacatur. *See* Pls.' Br. 16, ECF No. 111; Eclipse Resp. 15, ECF No. 113 (both citing *WildEarth Guardians*, 368 F. Supp. 3d at 84 n.35 (indicating that vacatur based on economic harms alone would be insufficient because "the risk of economic harm from procedural delay and industrial inconvenience is the nature of doing business, especially in an area fraught with bureaucracy and litigation")). Plaintiffs contend any economic losses cannot be wholly unexpected as all parties were aware of the public concern and opposition to the leasing decisions.

Pls.' Br. 16–17, ECF No. 111. Moreover, Plaintiffs argue that because most of the wells have not been drilled yet, the prospect of future economic losses is speculative at best. *Id.* at 18.

Plaintiffs rely on *W. Watersheds Project* to support their argument that vacatur of leases is not very disruptive. 441 F. Supp. 3d at 1083–84. But as Agency Defendants point out, that vacatur decision was subsequently stayed pending appeal. There is of course a difference between a stay pending appeal and a stay pending remand, but the Court acknowledges Agency Defendants' overall point that some economic harm is concrete, and perhaps irreversible, if vacatur is ordered.

Vacatur always has consequences, and the exception should not supplant the general rule. Nevertheless, the Court finds that the equitable considerations in this case warrant remand without vacatur.

### III. CONCLUSION

This decision to remand without vacatur, however, does not mean that all other activities can continue. As the parties acknowledge, there is a spectrum between complete vacatur and mere remand, and the Court has discretion to work within those parameters to craft an equitable remedy under the circumstances. *See WildEarth Guardians*, 368 F. Supp. 3d at 85 (issuing a remedy falling within this spectrum); *Mont. Wilderness Ass'n*, 408 F. Supp. 2d at 1038 (keeping leases intact while enjoining surface disturbing activities on oil and

gas leases pending subsequent NEPA analysis). Accordingly, the Court does the following:

1. **REMANDS** BLM's 2016 EA and corresponding FONSI and USFS's consent to lease to undergo revised NEPA analysis;

2. **ENJOINS** BLM from issuing any new APDs for development of leases at issue and raised in Plaintiffs' Complaint during the pendency of the NEPA review on remand;

3. **ENJOINS** water withdrawal from the Little Muskingum River for any drilling that is occurring pursuant to the already approved APD on the leased parcels; and

4. **ENJOINS** any further surface disturbing activities on the leased parcels pending a decision on remand.

This Order shall remain in effect until Agency Defendants complete their NEPA analysis in accordance with this Court's previous Opinion and Order, ECF No. 110. The Clerk is **DIRECTED** to enter final judgment and close this case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**