**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, HEARTWOOD, OHIO ENVIRONMENTAL COUNCIL, SIERRA CLUB <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. FOREST SERVICE, *et al*. <br><br> Federal Defendants; and <br><br> AMERICAN PETROLEUM INSTITUTE, *et al*. <br><br> Intervenor Defendants. | Civ. No. 2:17-cv-372 <br><br> Judge Michael H. Watson Magistrate Judge Kimberly A. Jolson <br><br> **PLAINTIFFS' NOTICE OF SUPPLEMENTAL DEVELOPMENTS IN SUPPORT OF MOTION TO ENFORCE** |

---

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL DEVELOPMENTS IN SUPPORT OF MOTION TO ENFORCE**

---

Plaintiffs respectfully submit this Notice to apprise the Court of recent developments bearing directly on Plaintiffs' pending Motion to Enforce Injunction (ECF No. 144).

As set forth in Plaintiffs' Motion to Enforce, this Court's 2021 remedies order (ECF No. 118) enjoined Defendants from authorizing development activities—including approval of Applications for Permits to Drill ("APDs") for leases at issue in Plaintiffs' Complaint—until Defendants completed analysis under the National Environmental Policy Act (NEPA) in compliance with the Court's prior orders. Defendants nonetheless filed a notice unilaterally asserting that Defendants had complied with the Court's orders, and that Defendants would begin to process and approve APDs, despite that the injunction remained, and continues to remain, in force. In the Motion to Enforce, Plaintiffs requested that the Court enforce the injunction,

because Defendants cannot unilaterally dissolve an injunction, and because Defendants'

supplemental Environmental Assessment does not correct the deficiencies that the Court

identified in its merits ruling.

Since the Motion to Enforce was fully briefed on January 16, 2026, Defendants have

taken the very action at issue: the Bureau of Land Management ("BLM") has approved new

APDs for oil and gas development in the Wayne National Forest. On May 18, 2026, BLM issued

a Decision Record and Categorical Exclusion approving three APDs for horizontal gas wells in

Monroe County, Ohio, relying on the same deficient Supplemental Environmental Assessment

challenged in Plaintiffs' Motion to Enforce. Ex. A (Decision Record) and B (Categorical

Exclusion). Accordingly, because Defendants have not satisfied the Court's orders, and because

the injunction remains in effect, BLM's approval of APDs violates the Court's injunction, and

reinforces Plaintiffs' need for relief on the pending Motion to Enforce.[1]

Moreover, the recently-approved APDs contain the same deficiencies in Defendants'

purported NEPA compliance. For example, the APD approvals fail to identify the source, timing,

or environmental impacts of substantial water withdrawals that the operator plans to carry out

(totaling tens of millions of gallons, Ex. C (Streamlined Biological Evaluation and Tier 2

Consultation Form)), despite acknowledged risks to sensitive aquatic species and waterways (*see*

ECF No. 144 at Page ID 8578). Nor does BLM's environmental review show that purported

mitigation measures will reduce these harms to insignificant levels. *See* ECF No. 144 at PageID

8578-82.

---

[1] On June 16, 2026, Plaintiffs administratively appealed BLM's approval of the APDs to BLM's Eastern States State Director and requested a stay of the decision pending resolution of the appeal. The appeal is still pending, but the State Director declined to stay the decision.

*Plaintiffs' Notice of Supplemental Developments* 1

In sum, while Plaintiffs' Motion to Enforce is still pending, Defendants are proceeding with authorizing oil and gas development activities based on a flawed and noncompliant NEPA analysis and, in doing so, are inflicting significant concrete harms on the Wayne National Forest's sensitive resources and on Plaintiffs' members' interests.

DATED: July 21, 2026

Respectfully submitted,

/s/      Megan M. Hunter
MEGAN M. HUNTER (OH 96035)
Trial Attorney for Plaintiffs Center for
Biological Diversity, Sierra Club, and
Heartwood
EARTHJUSTICE
311 South Wacker Dr., Suite 1400
Chicago, IL 60606
312-800-8331
mhunter@earthjustice.org

NATHAN G. JOHNSON (OH 0082838)
Trial Attorney for Ohio Environmental
Council
Ohio Environmental Council
556 East Town Street
Columbus, OH 43215
(614) 487-7506
njohnson@theoec.org

WENDY S. PARK (CA State Bar No.
237331), pro hac vice
EMMA L. YIP (CA State Bar No. 352446),
pro hac vice
Counsel for Center for Biological Diversity
Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
(510) 844-7138
wpark@biologicaldiversity.org
eyip@biologicaldiversity.org

ELIZABETH BENSON (CA State Bar No.
268851), pro hac vice
Counsel for Sierra Club
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5723
elly.benson@sierraclub.org

**CERTIFICATE OF SERVICE**

I certify that on July 21, 2026, I filed the foregoing document on behalf of Plaintiffs Center for Biological Diversity, Ohio Environmental Council, Sierra Club, and Heartwood via the CM/ECF system which will provide electronic service to all counsel of record.

DATED: July 21, 2026

/s/    *Megan M. Hunter*

MEGAN M. HUNTER (OH 96035)

# Exhibit A

**UNITED STATES DEPARTMENT OF THE INTERIOR**
**Bureau of Land Management**
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, WI 53202

**DECISION RECORD**
for Approval of Expand Operating LLC Applications for Permit to Drill
DOI-BLM-Eastern States-M000-2026-0005-CE
May 18, 2026

## I.  DECISION

The Bureau of Land Management (BLM) approves three Applications for Permit to Drill (APDs) submitted by Expand Operating LLC (Expand) to drill three gas wells (2HM, 4HM, and 10HM) on private land on the existing Herrick X-M MNR well pad located at Township 2 North, Range 4 West, Section 16 in Monroe County, Ohio (See map in attached CE, Attachment 1) (Proposed Action). The proposed wells would be drilled horizontally and penetrate federal minerals underlying the following six valid existing oil and gas leases (with dates of issue):

- OHES058226 – September 1, 2017
- OHES058227 – November 17, 2016
- OHES058229 – September 1, 2017
- OHES058230 – November 17, 2016
- OHES058232 – November 17, 2016
- OHES058298 – November 1, 2017

The approvals are predicated on applicable lease stipulations, Conditions of Approval (COAs) (see attached CE, Attachment 2), and Avoidance and Minimization Measures (AMMs) (see attached CE, Attachment 3) identified in the 2025 *Wayne National Forest Supplemental Environmental Assessment*. The BLM has authority to mitigate environmental effects from downhole operations and surface activities to protect resources and species when drilling for federal minerals.

## II.  CONFORMANCE AND COMPLIANCE

The Proposed Action is in conformance with the *Wayne National Forest 2006 Land and Resource Management Plan*[1] because it is consistent with goal or objectives in the Land Use Plan (objectives, terms, and conditions):

- Goal 10.1 in the 2006 Forest Plan states, "Provide a supply of mineral commodities for current and future generations, while protecting the long-term health and biological diversity of ecosystems. Facilitate the orderly exploration, development, and production

---

[1] The BLM was a cooperating agency in development of the 2006 Forest Plan and its related Final Environmental Impact Statement.

Decision Record                                                                                                                  1
DOI-BLM-Eastern States-M000-2026-0005-CE

of mineral and energy resources on land open to these activities" (2006 Forest Plan, p. 2-41).

- Objective 10.1a in the 2006 Forest Plan states, "Coordinate with the Bureau of Land Management to offer leases of Federally owned minerals" (2006 Forest Plan, p. 2-41).

The Proposed Action is categorically excluded from further environmental analysis under the National Environmental Policy Act (NEPA) in accordance with the Energy Policy Act of 2005 (Public Law 109-58) (42 U.S.C. § 15942) and does not require review for extraordinary circumstances. Categorical exclusions under Section 390 of the Energy Policy Act of 2005 are established by statute, and their application is governed by that statute. Section 390(a) of the Energy Policy Act of 2005 provides:

- NEPA Review.—Action by the Secretary of the Interior in managing the public lands, with respect to any of the activities described in subsection (b), shall be subject to a rebuttable presumption that the use of a categorical exclusion under the National Environmental Policy Act (NEPA) of 1969 would apply if the activity is conducted pursuant to the Mineral Leasing Act for the purpose of exploration or development of oil or gas.

42 U.S.C. § 15942(a). Categorical Exclusion #3 of Section 390 of the Energy Policy Act of 2005 can be used when a Proposed Action meets the following criteria:

- Drilling an oil or gas well within a developed field for which an approved land use plan or any environmental document prepared pursuant to NEPA analyzed drilling as a reasonably foreseeable activity, so long as such plan or document was approved within five years prior to the date of spudding the well.

*Id*. § 15942(b)(1). The Proposed Action meets the criteria to use a Section 390 categorical exclusion for these reasons:

- The Proposed Action would take place on an existing well pad, with no new disturbance. The well pad has been approved by the Ohio Department of Natural Resources, the regulatory agency for development of private minerals in the state of Ohio.
- In 2025, the BLM and the Forest Service jointly completed the *Wayne National Forest Supplemental Environmental Assessment* (DOI-BLM-Eastern States-M000-2023-0005-EA) which analyzed oil and gas drilling as a reasonably foreseeable activity within the Marietta Unit of the Wayne National Forest. Oil and gas drilling meets the purpose and need described in Section 1.2 of the 2025 *Wayne National Forest Supplemental Environmental Assessment*. On June 15, 2016, the U.S. Forest Service initially granted consent to the BLM to offer the subject parcels (part of Expression of Interest 1635) for a future competitive oil and gas lease sale. Upon completion of the 2025 *Wayne National Forest Supplemental Environmental Assessment*, on April 17, 2025, the U.S. Forest Service reaffirmed its consent authorizations to the BLM, specifically for the leasing of lands associated with 65 previously issued oil and gas leases in the Wayne National Forest. This reaffirmation included approval for the six leases related to the three APDs that are being proposed.

Decision Record                                                                                                                     2
DOI-BLM-Eastern States-M000-2026-0005-CE

- The wells will be drilled and penetrate federal minerals underlying the six valid, existing oil and gas leases listed in Section I above.

## III. PUBLIC INVOLVEMENT

On March 20, 2024, the BLM released the draft 2025 *Wayne National Forest Supplemental Environmental Assessment* for public review and comment for a 45-day comment period. In response to several requests, the BLM extended the comment period for an additional 10 days with comments due by the end of day on May 17, 2024. The draft 2025 *Wayne National Forest Supplemental Environmental Assessment* was available for review and comment on the project ePlanning website at: https://eplanning.blm.gov/Project-Home/?id=3EFAEEDA-A7F2-F011-8407-001DD80DB62A.

During the public comment period, the BLM hosted two virtual public meetings on April 8 and April 9, 2024, where the BLM presented the draft 2025 *Wayne National Forest Supplemental Environmental Assessment* and the public had an opportunity to learn more about the draft 2025 *Wayne National Forest Supplemental Environmental Assessment* and ask questions of the agency team. The BLM received 264 individual substantive comments during the public comment period. Appendix J of the 2025 *Wayne National Forest Supplemental Environmental Assessment* presented the substantive comments received during the comment period and agency responses to those comments.

The BLM Northeastern States District Office conducted internal scoping regarding the applications received from Expand. The categorical exclusion was posted on the BLM's National NEPA Register on February 26, 2026, at https://eplanning.blm.gov/Project-Home/?id=27320880-DB4E-F111-BEC6-001DD8084607.

## IV. RATIONALE FOR DECISION

The BLM – as required by various laws, including the Minerals Leasing Act (MLA) (30 U.S.C. § ] 181 et seq.), the MLA for Acquired Lands of 1947 (30 U.S.C.§§ 351-359), the National Forest Management Act (16 U.S.C. § 1604(e)(1)), the Federal Land Policy and Management Act of 1976 (FLPMA) (43 U.S.C. § 1701 et seq.)), and the Energy Policy Act of 2005 (Public Law 109-58, Sections 362-374 (Subtitle F) (Aug. 8, 2005)) – is responsible for leasing subsurface federal minerals to meet national, regional, and local needs. Consistent with applicable law, the BLM's oil and gas leasing program encourages the responsible development of domestic oil and gas reserves and multiple-use and sustained-yield management goals. This decision aligns with recent Executive Order 14154, *Unleashing American Energy* (Jan. 20, 2025) and with the MLA's central purpose of "promot[ing] the orderly development" of Federal oil and gas "through private enterprise."[2]

---

[2] *Geosearch, Inc. v. Andrus*, 508 F. Supp. 839, 842 (D. Wyo. 1981) (citing *Harvey v. Udall*, 384 F.2d 883 (10th Cir. 1967)).

Decision Record                                                                                                     3
DOI-BLM-Eastern States-M000-2026-0005-CE

It is my decision to approve the Proposed Action, as conditioned through the COAs and AMMs detailed in the SEA and DOI-BLM-Eastern States-M000-2026-0005-CE (Attachment). I find that this action will not result in significant impacts on the human environment pursuant to 43 CFR 46.300. I have also determined that the Proposed Action is in conformance with the *Wayne National Forest 2006 Land and Resource Management Plan*, as amended, and will not cause unnecessary or undue degradation.

## V.  RIGHT OF PROTEST AND/OR APPEAL:

Under BLM regulations, this decision is subject to administrative review in accordance with 43 CFR 3165. Any request for administrative review of this decision must include information required under 43CFR3165.3(b) (State Director Review), including all supporting documentation. Such a request must be filed in writing with the State Director, Bureau of Land Management, 5275 Leesburg Pike, Falls Church, VA 22041, no later than 20 business days after this Decision Record is received or considered to have been received. Any party who is adversely affected by the State Director's decision may appeal that decision to the Interior Board of Land Appeals, as provided in 43 CFR 3165.4.

## VI. APPROVAL

_____          _____

Pamela A. Mathis, District Manager                        Date

**ATTACHMENT:**

Categorical Exclusion - Expand Operating LLC Applications for Permit to Drill (DOI-BLM-Eastern States-M000-2026-0005-CE)

# Exhibit B

**UNITED STATES DEPARTMENT OF THE INTERIOR**
**Bureau of Land Management**
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, WI 53202

**CATEGORICAL EXCLUSION**

DOI-BLM-Eastern States-M000-2026-0005-CE

### A. BACKGROUND

**Proposed Action Title/Type:** Expand Operating LLC Applications for Permit to Drill

**Location of Proposed Action:** Township 2 North, Range 4 West
Ohio River Survey
Section 16
Lee Township
Monroe County, Ohio

GPS: 39.645635, -80.966761

**Lease No:** OHES058226, OHES058298, OHES058229, OHES058230, OHES058232, OHES058298

**Applicant:** Expand Operating LLC, 6100 N. Western Avenue, Oklahoma City, OK 73154

### B. DESCRIPTION OF PROPOSED ACTION

The Bureau of Land Management (BLM) received three Applications for Permit to Drill (APDs) from Expand Operating LLC (Expand) to drill three gas wells (2HM, 4HM, and 10HM) on private land on the existing Herrick X-M MNR well pad located at Township 2 North, Range 4 West, Section 16 in Monroe County, Ohio (See map in Attachment 1) (Proposed Action). The proposed wells would be drilled horizontally and penetrate federal minerals underlying the following six existing oil and gas leases (with dates of issue):

- OHES058226 – September 1, 2017
- OHES058227 – November 17, 2016
- OHES058229 – September 1, 2017
- OHES058230 – November 17, 2016
- OHES058232 – November 17, 2016
- OHES058298 – November 1, 2017

Currently, there are five wells on the existing Herrick X-M MNR well pad that produce gas. The well pad is located on private lands, and the Ohio Department of Natural Resources has previously approved development there. While the three newly proposed gas wells would be located on the same Herrick X-M MNR well pad, the proposal now is to drill from the private surface horizontally into the subsurface federal mineral estate managed by the BLM. The federal

DOI-BLM-Eastern States-M000-2026-0005-CE                                                                 1

surface lands are managed by the U.S. Forest Service within the Wayne National Forest. The roads and pipelines accessing the well pad would remain the same with no additional disturbance required. The Surface Use Plans of Operation (SUPO) submitted with the Expand APDs provides specifications for the operation, maintenance, and restoration of the well sites. The SUPO also includes applicant-committed environmental protection measures and best management practices that would be attached to the approved APDs as Conditions of Approval (COAs) mandated by the BLM pursuant to 43 CFR 3171.13 (Attachment 2).

The decision before the BLM is whether to approve the APDs for production of federal minerals associated with valid, existing federal oil and gas leases. The BLM's approval of the APDs is the Federal action or undertaking that requires the National Environmental Policy Act (NEPA), the Endangered Species Act (ESA), and National Historic Preservation Act (NHPA) compliance, not the pre-existing surface disturbance(s) associated with the well (well pad, access road, pipeline, power line, etc.). The pre-existing surface disturbance(s) and facilities are not the result of a Federal action. If the APDs are approved, the approvals would include any applicable lease stipulations, COAs, and avoidance and minimization measures (AMMs) (Attachment 3) identified in the 2025 *Wayne National Forest Supplemental Environmental Assessment*. These measures align with the BLM's authority to mitigate environmental effects from downhole operations and surface activities.

An approved APD is valid for a period of four years. If the applicant fails to commence drilling a well during that period, the APD would expire, and the applicant would lose the right to drill the proposed well. The applicant would have to resubmit another APD.

## C.  LAND USE PLAN CONFORMANCE

The Proposed Action is in conformance with the *Wayne National Forest 2006 Land and Resource Management Plan*[1], because it is consistent with the following LUP decisions (objectives, terms, and conditions):

Land Use Plan Name: *Wayne National Forest 2006 Land and Resource Management Plan* (2006 Forest Plan)

Date Approved: January 2006

- Goal 10.1 in the 2006 Forest Plan states, "Provide a supply of mineral commodities for current and future generations, while protecting the long-term health and biological diversity of ecosystems. Facilitate the orderly exploration, development, and production of mineral and energy resources on land open to these activities" (2006 Forest Plan, p. 2-41).
- Objective 10.1a in the 2006 Forest Plan states, "Coordinate with the Bureau of Land Management to offer leases of Federally owned minerals" (2006 Forest Plan, p. 2-41).

Development of subsurface minerals underlying the Wayne National Forest must be consistent with the U.S. Forest Service's management area direction and applicable standards and

---

[1] The BLM was a cooperating agency in development of the 2006 Forest Plan and its related Final Environmental Impact Statement.

DOI-BLM-Eastern States-M000-2026-0005-CE                                          2

guidelines, as identified in the governing 2006 Forest Plan. The leases, where the APDs are being proposed, conform to the 2006 Forest Plan.

The BLM would require Avoidance and Minimization Measures (AMMs) (Attachment 3) to APDs as COAs to minimize the impacts of drilling activities to protect resources and species when drilling for federal minerals from private surface.

### D.  COMPLIANCE WITH NEPA

The Proposed Action is categorically excluded from further environmental analysis under the National Environmental Policy Act (NEPA) in accordance with the Energy Policy Act of 2005 (Public Law 109-58) (42 USC 15942) and does not require review for extraordinary circumstances. Categorical exclusions under Section 390 of the Energy Policy Act of 2005 are established by statute, and their application is governed by that statute. Section 390(a) of the Energy Policy Act of 2005 provides:

- NEPA Review.—Action by the Secretary of the Interior in managing the public lands, with respect to any of the activities described in subsection (b), shall be subject to a rebuttable presumption that the use of a categorical exclusion under the National Environmental Policy Act (NEPA) of 1969 would apply if the activity is conducted pursuant to the Mineral Leasing Act for the purpose of exploration or development of oil or gas.

42 U.S.C. § 15942(a). Categorical Exclusion #3 of Section 390(b) of the Energy Policy Act of 2005 may be used when a Proposed Action meets the following criteria:

- Drilling an oil or gas well within a developed field for which an approved land use plan or any environmental document prepared pursuant to NEPA analyzed drilling as a reasonably foreseeable activity, so long as such plan or document was approved within five years prior to the date of spudding the well.

*Id*. § 15942(b)(1). The Proposed Action meets the criteria to use a Section 390 categorical exclusion for these reasons:

- The Proposed Action would take place on an existing well pad approved by the Ohio Department of Natural Resources, the regulatory agency for development of private minerals in the state of Ohio.
- In 2025, the BLM and the Forest Service jointly completed the *Wayne National Forest Supplemental Environmental Assessment* (DOI-BLM-Eastern States-M000-2023-0005-EA) which analyzed oil and gas drilling as a reasonably foreseeable activity within the Marietta Unit of the Wayne National Forest. Oil and gas drilling meets the purpose and need described in Section 1.2 of the 2025 *Wayne National Forest Supplemental Environmental Assessment*. On June 15, 2016, the U.S. Forest Service initially granted consent to the BLM to offer the subject parcels (part of Expression of Interest 1635) for a future competitive oil and gas lease sale. Upon completion of the 2025 *Wayne National Forest Supplemental Environmental Assessment*, on April 17, 2025, the U.S. Forest Service reaffirmed its consent authorizations to the BLM, specifically for the leasing of

DOI-BLM-Eastern States-M000-2026-0005-CE                                              3

lands associated with 65 previously issued oil and gas leases in the Wayne National Forest. This reaffirmation included approval for the six leases related to the three APDs that are being proposed.

**Compliance with the *Wayne National Forest Supplemental Environmental Assessment* and its Biological Assessment**

As defined in the 2025 *Wayne National Forest Supplemental Environmental Assessment*, oil and gas development would occur in three stages of federal environmental analysis and authorization. Consideration of environmental impacts is required at each of the following three stages of environmental review in the leasing and development of federal mineral estate:

- Stage 1: Environmental review in support of identifying areas that are available for or closed to oil and gas leasing, in compliance with the *Wayne National Forest 2006 Land and Resource Management Plan*;

- Stage 2: Environmental review in support of conducting competitive lease sales for parcels that are available for leasing and nominated in Expressions of Interest; and

- Stage 3: Environmental review in support of approving APDs based on specific development proposals.

The Stage 3 environmental review at issue here includes an analysis of the potential impacts associated with the identified site-specific Proposed Action submitted by Expand. During the Stage 3 environmental review, the BLM will initiate a consultation with U.S. Fish and Wildlife Service (USFWS) (referred to as Tier 2 consultation, as discussed below) to assess species impacts under the site-specific development proposals included in the APDs and would apply AMMs and COAs and would not permit site-specific activities that would result in the take of federally listed species.

## E.  CONSULTATION AND COORDINATION

**Section 106 of National Historic Preservation Act**

The BLM initiated consultation with Ohio State Historic Preservation Office (SHPO) via electronic letter on March 9, 2026, recommending a finding of No Historic Properties Affected for the Proposed Action since no new surface disturbance is proposed. The BLM received concurrence on this finding in a letter from Ohio SHPO dated April 6, 2026 (Attachment 4).

The BLM initiated government-to-government consultation on the Proposed Action via certified mail and electronic letter March 10, 2026, to 15 federally-recognized tribes, including: The Shawnee Tribe, Eastern Shawnee Tribe of Oklahoma, Delaware Nation, Delaware Tribe of Indians, Absentee Shawnee Tribe, Wyandotte Nation, Miami Tribe of Oklahoma, Osage Nation, Citizen Potawatomi Nation, Forest County Potawatomi Community it Wisconsin, Hannahville Indian Community, Ottawa Tribe of Oklahoma, Peoria Tribe of Indians of Oklahoma, Prairie Band Potawatomi Nation, and the Seneca-Cayuga Tribe of Oklahoma. The BLM notified the tribes of their finding of No Historic Properties Affected for the Proposed Action. To date, the BLM has received concurrence from Delaware Nation (March 25, 2026), Osage Nation (March

DOI-BLM-Eastern States-M000-2026-0005-CE                                                4

30, 2026), Absentee Shawnee (April 1, 2026), and Shawnee Tribe (April 7, 2026). All responding tribes requested additional consultation in the event any unanticipated discoveries are encountered during operations. As of the date of this CE, no other responses have been received.

**Endangered Species Act**

Pursuant to Section 7 of the Endangered Species Act (ESA), the BLM consulted with the USFWS on potential impacts to federally listed threatened, endangered, proposed, and candidate species. The USFWS has a two-tiered process for Section 7 consultations with the BLM for future oil and gas development.

- Tier 1 programmatic consultation was completed in conjunction with the 2025 *Wayne National Forest Supplemental Environmental Assessment* that identified listed species that could be affected by proposed oil and gas development and identified a set of AMMs, some or all of which (predicated upon site specific proposals) may be applied to APDs as COAs during Tier 2 consultation.

- Tier 2 consultation is site-specific development proposed in APDs. The BLM and the USFWS select appropriate AMMs from the set of AMMs identified during Tier 1 consultation and apply those AMMs to APDs as COAs.

On April 8, 2026, the BLM initiated Tier 2 consultation with the USFWS. The BLM requested a review of a consultation package that included the Streamlined Biological Evaluation and Tier 2 Consultation Form (Attachment 5) that identifies appropriate AMMs and requests concurrence with the BLM's *not likely to adversely affect listed species and no jeopardy* determinations. On April 10, 2026, the USFWS concurred with BLM's *not likely to adversely affect and no jeopardy* determinations (Attachment 6).

The BLM has obtained the information described below from the applicant and will verify information by reviewing state permits issued for the proposed action and conducting onsite monitoring. The BLM will store this information in a geographic information system (GIS) so that it may be queried to comply with stated limits adopted in the Tier 2 consultation with USFWS and the Biological Assessment (Appendix G) of the *Wayne National Forest Supplemental Environmental Assessment*:

- The total number of drill holes approved on the Wayne National Forest since the 2025 *Wayne National Forest Supplemental Environmental Assessment*.
- Acres of long-term disturbance on the Wayne National Forest, both total and concurrent by all companies.
- Acres of short-term disturbance on the Wayne National Forest, both total and concurrent by all companies.
- Gallons of water withdrawn by all companies from water sources for oil and gas operations on the Wayne National Forest.
- Locations of water withdrawals used by companies during operations conducted on the Wayne National Forest. The BLM obtains locations of permitted water withdrawals from the State of Ohio and will verify that operators are not using water from the prohibited sources to support activities that are permitted under approved APDs.

### F.  CONCLUSION

This categorical exclusion is the appropriate level of NEPA because it is authorized under Section 390 of the Energy Policy Act of 2005. This categorical exclusion satisfies the Section 7 of the ESA Streamlined Biological Evaluation and Tier 2 consultation with the USFWS to identify appropriate and site specific AMMs and COAs as specified in the 2025 *Wayne National Forest Supplemental Environmental Assessment*.

### G.  SIGNATURE

Based on the review of this proposal and the supporting documentation, I have determined that the Proposed Action meets the requirements of Section 390 of the Energy Policy Act.


Responsible Official: _____   Date: _____
                                Pamela A. Mathis, District Manager


**ATTACHMENTS:**
Attachment 1: Map of Project Area
Attachment 2: Conditions of Approval
Attachment 3: Avoidance and Minimization Measures
Attachment 4: Ohio SHPO Concurrence Letter
Attachment 5: Streamlined Biological Evaluation and Tier 2 Consultation Form
Attachment 6: U.S. Fish & Wildlife Service Concurrence Letter

**Attachment 1: Map of Project Area**

# Herrick X-M MNR Project Overview



Legend

— Herrick_XM_MNR_2HM
 HERRICK_PAD
— Herrick_XM_MNR_10HM_Ex01
— Herrick_XM_MNR_4HM_Ex04

0    0.38    0.75          1.5 Miles

No warranty is made by the BLM as to the accuracy,
reliability, or completeness of these data for individual
use or aggregate use with other data. Original data were
compiled from various sources. This information may not
meet National Map Accuracy Standards. This product was
developed through digital means and may be updated
without notification. Data is intended for the use of BLM
personnel.

Author: Matt Silvey

DOI-BLM-Eastern States-M000-2026-0005-CE                    7

**Attachment 2: Conditions of Approval**

## Herrick XM MNR 2HM

 **United States Department of the Interior**
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states

**CONDITIONS OF APPROVAL FOR**
**APPLICATION FOR PERMIT TO DRILL**

| | |
|---|---|
| Operator: | Expand Operating LLC |
| Well: | Herrick G-M 2HM |
| Location: | GPS: 39.645635, -80.966761 |
| | Monroe County, Ohio |
| Lease: | OHES 58226, OHES 58298, OHES 58232, OHES 58229 |

**GOVERNMENT CONTACTS**
Bureau of Land Management

Northeastern States District Office (NSDO) Trey Mitchell, Petroleum Engineer (414) 331-8055
tmitchell@blm.gov

<u>A COPY OF THESE CONDITIONS MUST BE FURNISHED TO YOUR FIELD
REPRESENTATIVE TO ENSURE COMPLIANCE</u>

The attached "Application for Permit to Drill. . ." (APD) is valid for a period of four years from the date of approval or until lease expiration, whichever occurs first. If this APD terminates, any surface disturbance created under the APD must be rehabilitated in accordance with the approved surface-use plan. After termination, drilling operations will require a new application to be filed for approval with BLM.

**Drilling Operations**

1. <u>The spud date will be reported orally to NSDO at least 72 hours prior to spudding.</u>

2. Notify the NSDO to schedule a Pre-Spud meeting between the operator and the Petroleum Engineering Technician assigned to the well for inspection and regulation compliance.

3. Any changes to the approved drilling plan shall be approved by the NSDO Petroleum Engineer prior to being implemented.

4. The operator shall install an identification sign consistent with the requirements of 43 CFR 3162.6. All wells, whether drilling, producing, suspended, or abandoned shall be identified in accordance with 43 CFR 3162.6. There shall be a sign or marker with the name of the operator, lease serial number, well number, and surveyed description of the well.

5. Daily drilling progress reports shall be electronically filed with the NSDO Petroleum Engineer until drilling activity is completed.



## United States Department of the Interior
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



6. Notify the assigned NSDO Petroleum Engineering Technician at least 24 hours in advance of casing or BOP pressure tests.

7. All Blow Out Prevention Equipment (BOPE) rated 3M or greater shall be isolated from the casing with a test plug and tested to stack working pressure. No bleed-off of pressure is acceptable. Annular preventers shall be tested to 50% of working pressure.

8. 5M choke manifold with a 10M BOP is acceptable due to max surface pressure being less than 5000psi. Calculated max surface pressure is about 3243 psi.

9. During air/gas drilling operations, spark arrestors on engines or water-cooled exhaust shall be in place and operational.

10. All lines, except for the low pressure line connected to the outlet of the gas buster, connected to the flare system must be straight unless turns are targeted with running tees.

11. Cementing of Casing: If there are indications of inadequate primary cementing of the surface, intermediate, or production casing strings, such as but not limited to no returns to surface, cement channeling, or mechanical failure of equipment, the operator will evaluate the adequacy of the cementing operations. This evaluation will consist of pressure testing the casing shoe, running a cement bond log, cement evaluation tool log or a combination thereof. If the evaluation indicates inadequate cementing, the operator will be required to contact this office for approval of remedial cementing work. The operator will verify the adequacy of the remedial cementing operations as described above. We will require all remedial work to be completed before drilling out the casing shoe.

12. A minimum of one centralizer per joint must be ran on the bottom three (3) joints on the surface casing.

13. In the event abandonment of a drilling well is desired prior approval **must** be obtained from BLM. An oral request may be granted by BLM but must be followed by a electronic "Notice of Intention to Abandon" in AFMSS within five (5) days after oral approval. If possible, BLM must be notified at least 48 hours in advance of well plugging, so that BLM may witness plugging operations. Refer to 43 CFR 3172.12 for further information regarding BLM abandonment requirements.

14. A "Well Completion Report and Log" (Form 3160-4) must be submitted electronically in AFMSS no later than 30 days after completion of the well either as a producer or dry hole. One copy of all geophysical logs, core descriptions, and other data obtained during drilling, completion, and/or workover operations will be submitted with Form 3160-4 to BLM.



**United States Department of the Interior**
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



15. Within thirty (30) days following construction of a new tank battery, a site facility diagram of the battery depicting actual conditions and piping shall be submitted to the Authorized Officer. Facility diagrams shall be filed within thirty (30) days after existing facilities are modified.

16. Variance for flexible choke line approved with the following conditions:

1) Manufacturers' technical specifications must always be kept on site and available for inspection. At a minimum, the following information must be included in the documentation:

    a. The smallest cross sectional internal diameter of the proposed flexible hose assembly.
    b. The rated working pressure and temperature of the proposed flexible hose assembly.
    c. The minimum bend radius (MBR) at rated working pressure for the proposed flexible hose assembly.

2) Each flexible hose must be marked and/or stamped by the manufacturer with the following information:

    a. Name or identification of the manufacturer.
    b. Serial number.
    c. The internal diameter of the flexible hose assembly.
    d. The rated working pressure of the flexible hose assembly.

3) Flexible hoses must be firmly anchored to prevent excessive whip or vibration. Anchors must be constructed in a manner capable of withstanding whip and vibration given the rated working pressure and flow rates of the well control equipment.

    a. Anchors must be attached to the flexible portion of the hose and not to the "metal end assemblies" (e.g. hubs, flanges, stiffeners, etc.).
    b. Flexible hoses of twenty (20) feet or more in total length must be supported in order to keep the hose level and secure from excessive movement. Leveling support locations must also be anchored adequately to withstand whip and vibration for rated working pressures and rated flowing conditions
    c. Each and every bend in the flexible hoses exceeding 45 degrees must be anchored.

DOI-BLM-Eastern States-M000-2026-0005-CE

10



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



4) Use, operation, and maintenance of flexible hoses will comply fully with the manufacturers specifications unless otherwise specified by the authorized.

5) Flexible hoses used in Hydrogen Sulfide (H2S) operations must demonstrate proof the hose is approved by the manufacturer for use in this type of environment.

6) Flexible hoses which are deformed with kinks, flattened areas, dents, significant surface abrasions, significant wear, permanent bends, or any other defect which may degrade the proposed flexible hoses operational safety or deviate from the manufacturer's design and operational specification will be replaced upon discovery.

DOI-BLM-Eastern States-M000-2026-0005-CE

11

**Herrick XM MNR 4HM**



**United States Department of the Interior**
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



**CONDITIONS OF APPROVAL FOR
APPLICATION FOR PERMIT TO DRILL**

| | |
|---|---|
| Operator: | Expand Operating LLC |
| Well: | Herrick G-M 4HM |
| Location: | GPS: 39.645783, -80.966373 |
| | Monroe County, Ohio |
| Lease: | OHES 58298, OHES 58229 |

**GOVERNMENT CONTACTS**
Bureau of Land Management

Northeastern States District Office (NSDO) Trey Mitchell, Petroleum Engineer (414) 331-8055
tmitchell@blm.gov

<u>A COPY OF THESE CONDITIONS MUST BE FURNISHED TO YOUR FIELD
REPRESENTATIVE TO ENSURE COMPLIANCE</u>

The attached "Application for Permit to Drill. . ." (APD) is valid for a period of four years from
the date of approval or until lease expiration, whichever occurs first. If this APD terminates, any
surface disturbance created under the APD must be rehabilitated in accordance with the approved
surface-use plan.  After termination, drilling operations will require a new application to be filed
for approval with BLM.

**Drilling Operations**

1. <u>The spud date will be reported orally to NSDO at least 72 hours prior to spudding.</u>

2. Notify the NSDO to schedule a Pre-Spud meeting between the operator and the Petroleum
   Engineering Technician assigned to the well for inspection and regulation compliance.

3. Any changes to the approved drilling plan shall be approved by the NSDO Petroleum
   Engineer prior to being implemented.

4. The operator shall install an identification sign consistent with the requirements of 43 CFR
   3162.6.  All wells, whether drilling, producing, suspended, or abandoned shall be identified
   in accordance with 43 CFR 3162.6.  There shall be a sign or marker with the name of the
   operator, lease serial number, well number, and surveyed description of the well.

5. Daily drilling progress reports shall be electronically filed with the NSDO Petroleum
   Engineer until drilling activity is completed.



**United States Department of the Interior**
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



6. Notify the assigned NSDO Petroleum Engineering Technician at least 24 hours in advance of casing or BOP pressure tests.

7. All Blow Out Prevention Equipment (BOPE) rated 3M or greater shall be isolated from the casing with a test plug and tested to stack working pressure. No bleed-off of pressure is acceptable. Annular preventers shall be tested to 50% of working pressure.

8. 5M choke manifold with a 10M BOP is acceptable due to max surface pressure being less than 5000psi. Calculated max surface pressure is about 3243 psi.

9. During air/gas drilling operations, spark arrestors on engines or water-cooled exhaust shall be in place and operational.

10. All lines, except for the low pressure line connected to the outlet of the gas buster, connected to the flare system must be straight unless turns are targeted with running tees.

11. Cementing of Casing: If there are indications of inadequate primary cementing of the surface, intermediate, or production casing strings, such as but not limited to no returns to surface, cement channeling, or mechanical failure of equipment, the operator will evaluate the adequacy of the cementing operations. This evaluation will consist of pressure testing the casing shoe, running a cement bond log, cement evaluation tool log or a combination thereof. If the evaluation indicates inadequate cementing, the operator will be required to contact this office for approval of remedial cementing work. The operator will verify the adequacy of the remedial cementing operations as described above. We will require all remedial work to be completed before drilling out the casing shoe.

12. A minimum of one centralizer per joint must be ran on the bottom three (3) joints on the surface casing.

13. In the event abandonment of a drilling well is desired prior approval **must** be obtained from BLM. An oral request may be granted by BLM but must be followed by a electronic "Notice of Intention to Abandon" in AFMSS within five (5) days after oral approval. If possible, BLM must be notified at least 48 hours in advance of well plugging, so that BLM may witness plugging operations. Refer to 43 CFR 3172.12 for further information regarding BLM abandonment requirements.

14. A "Well Completion Report and Log" (Form 3160-4) must be submitted electronically in AFMSS no later than 30 days after completion of the well either as a producer or dry hole. One copy of all geophysical logs, core descriptions, and other data obtained during drilling, completion, and/or workover operations will be submitted with Form 3160-4 to BLM.



**United States Department of the Interior**
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



15. Within thirty (30) days following construction of a new tank battery, a site facility diagram of the battery depicting actual conditions and piping shall be submitted to the Authorized Officer. Facility diagrams shall be filed within thirty (30) days after existing facilities are modified.

16. Variance for flexible choke line approved with the following conditions:

1) Manufacturers' technical specifications must always be kept on site and available for inspection. At a minimum, the following information must be included in the documentation:

    a. The smallest cross sectional internal diameter of the proposed flexible hose assembly.
    b. The rated working pressure and temperature of the proposed flexible hose assembly.
    c. The minimum bend radius (MBR) at rated working pressure for the proposed flexible hose assembly.

2) Each flexible hose must be marked and/or stamped by the manufacturer with the following information:

    a. Name or identification of the manufacturer.
    b. Serial number.
    c. The internal diameter of the flexible hose assembly.
    d. The rated working pressure of the flexible hose assembly.

3) Flexible hoses must be firmly anchored to prevent excessive whip or vibration. Anchors must be constructed in a manner capable of withstanding whip and vibration given the rated working pressure and flow rates of the well control equipment.

    a. Anchors must be attached to the flexible portion of the hose and not to the "metal end assemblies" (e.g. hubs, flanges, stiffeners, etc.).
    b. Flexible hoses of twenty (20) feet or more in total length must be supported in order to keep the hose level and secure from excessive movement. Leveling support locations must also be anchored adequately to withstand whip and vibration for rated working pressures and rated flowing conditions
    c. Each and every bend in the flexible hoses exceeding 45 degrees must be anchored.

DOI-BLM-Eastern States-M000-2026-0005-CE          14



## United States Department of the Interior
### BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



4) Use, operation, and maintenance of flexible hoses will comply fully with the manufacturers specifications unless otherwise specified by the authorized.

5) Flexible hoses used in Hydrogen Sulfide (H2S) operations must demonstrate proof the hose is approved by the manufacturer for use in this type of environment.

6) Flexible hoses which are deformed with kinks, flattened areas, dents, significant surface abrasions, significant wear, permanent bends, or any other defect which may degrade the proposed flexible hoses operational safety or deviate from the manufacturer's design and operational specification will be replaced upon discovery.

## Herrick XM MNR 10HM



# United States Department of the Interior
### BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



## CONDITIONS OF APPROVAL FOR
## APPLICATION FOR PERMIT TO DRILL

| | |
|---|---|
| Operator: | Expand Operating LLC |
| Well: | Herrick G-M 10HM |
| Location: | GPS: 39.645789, -80.966323 |
| | Monroe County, Ohio |
| Lease: | OHES 59496 |

### GOVERNMENT CONTACTS
**Bureau of Land Management**

Northeastern States District Office (NSDO) Trey Mitchell, Petroleum Engineer (414) 331-8055
tmitchell@blm.gov

### A COPY OF THESE CONDITIONS MUST BE FURNISHED TO YOUR FIELD
### REPRESENTATIVE TO ENSURE COMPLIANCE

The attached "Application for Permit to Drill. . ." (APD) is valid for a period of four years from the date of approval or until lease expiration, whichever occurs first. If this APD terminates, any surface disturbance created under the APD must be rehabilitated in accordance with the approved surface-use plan. After termination, drilling operations will require a new application to be filed for approval with BLM.

### Drilling Operations

1. The spud date will be reported orally to NSDO at least 72 hours prior to spudding.

2. Notify the NSDO to schedule a Pre-Spud meeting between the operator and the Petroleum Engineering Technician assigned to the well for inspection and regulation compliance.

3. Any changes to the approved drilling plan shall be approved by the NSDO Petroleum Engineer prior to being implemented.

4. The operator shall install an identification sign consistent with the requirements of 43 CFR 3162.6. All wells, whether drilling, producing, suspended, or abandoned shall be identified in accordance with 43 CFR 3162.6. There shall be a sign or marker with the name of the operator, lease serial number, well number, and surveyed description of the well.

5. Daily drilling progress reports shall be electronically filed with the NSDO Petroleum Engineer until drilling activity is completed.



# United States Department of the Interior
### BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



6. Notify the assigned NSDO Petroleum Engineering Technician at least 24 hours in advance of casing or BOP pressure tests.

7. All Blow Out Prevention Equipment (BOPE) rated 3M or greater shall be isolated from the casing with a test plug and tested to stack working pressure. No bleed-off of pressure is acceptable. Annular preventers shall be tested to 50% of working pressure.

8. 5M choke manifold with a 10M BOP is acceptable due to max surface pressure being less than 5000psi. Calculated max surface pressure is about 3243 psi.

9. During air/gas drilling operations, spark arrestors on engines or water-cooled exhaust shall be in place and operational.

10. All lines, except for the low pressure line connected to the outlet of the gas buster, connected to the flare system must be straight unless turns are targeted with running tees.

11. Cementing of Casing: If there are indications of inadequate primary cementing of the surface, intermediate, or production casing strings, such as but not limited to no returns to surface, cement channeling, or mechanical failure of equipment, the operator will evaluate the adequacy of the cementing operations.  This evaluation will consist of pressure testing the casing shoe, running a cement bond log, cement evaluation tool log or a combination thereof.  If the evaluation indicates inadequate cementing, the operator will be required to contact this office for approval of remedial cementing work. The operator will verify the adequacy of the remedial cementing operations as described above.  We will require all remedial work to be completed before drilling out the casing shoe.

12. A minimum of one centralizer per joint must be ran on the bottom three (3) joints on the surface casing.

13. In the event abandonment of a drilling well is desired prior approval **must** be obtained from BLM.  An oral request may be granted by BLM but must be followed by a electronic "Notice of Intention to Abandon" in AFMSS within five (5) days after oral approval.  If possible, BLM must be notified at least 48 hours in advance of well plugging, so that BLM may witness plugging operations.  Refer to 43 CFR 3172.12 for further information regarding BLM abandonment requirements.

14. A "Well Completion Report and Log" (Form 3160-4) must be submitted electronically in AFMSS no later than 30 days after completion of the well either as a producer or dry hole. One copy of all geophysical logs, core descriptions, and other data obtained during drilling, completion, and/or workover operations will be submitted with Form 3160-4 to BLM.

DOI-BLM-Eastern States-M000-2026-0005-CE                                    17



## United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



15. Within thirty (30) days following construction of a new tank battery, a site facility diagram of the battery depicting actual conditions and piping shall be submitted to the Authorized Officer. Facility diagrams shall be filed within thirty (30) days after existing facilities are modified.

16. Variance for flexible choke line approved with the following conditions:

1) Manufacturers' technical specifications must always be kept on site and available for inspection. At a minimum, the following information must be included in the documentation:

    a. The smallest cross sectional internal diameter of the proposed flexible hose assembly.
    b. The rated working pressure and temperature of the proposed flexible hose assembly.
    c. The minimum bend radius (MBR) at rated working pressure for the proposed flexible hose assembly.

2) Each flexible hose must be marked and/or stamped by the manufacturer with the following information:

    a. Name or identification of the manufacturer.
    b. Serial number.
    c. The internal diameter of the flexible hose assembly.
    d. The rated working pressure of the flexible hose assembly.

3) Flexible hoses must be firmly anchored to prevent excessive whip or vibration. Anchors must be constructed in a manner capable of withstanding whip and vibration given the rated working pressure and flow rates of the well control equipment.

    a. Anchors must be attached to the flexible portion of the hose and not to the "metal end assemblies" (e.g. hubs, flanges, stiffeners, etc.).
    b. Flexible hoses of twenty (20) feet or more in total length must be supported in order to keep the hose level and secure from excessive movement. Leveling support locations must also be anchored adequately to withstand whip and vibration for rated working pressures and rated flowing conditions
    c. Each and every bend in the flexible hoses exceeding 45 degrees must be anchored.



### United States Department of the Interior
BUREAU OF LAND MANAGEMENT
Northeastern States District Office
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, Wisconsin 53202-4617
https://www.blm.gov/eastern-states



4)  Use, operation, and maintenance of flexible hoses will comply fully with the manufacturers specifications unless otherwise specified by the authorized.

5)  Flexible hoses used in Hydrogen Sulfide (H2S) operations must demonstrate proof the hose is approved by the manufacturer for use in this type of environment.

6)  Flexible hoses which are deformed with kinks, flattened areas, dents, significant surface abrasions, significant wear, permanent bends, or any other defect which may degrade the proposed flexible hoses operational safety or deviate from the manufacturer's design and operational specification will be replaced upon discovery.

DOI-BLM-Eastern States-M000-2026-0005-CE                                                    19

**Attachment 3: Avoidance and Minimization Measures**

**Avoidance and Minimization Measures for Expand Applications for Permits to Drill (APDs) under Situation 1**

<u>Situation 1:</u>
Private Property: Surface disturbance completed on private land to access private minerals prior to submittal of an APD to the BLM, and no further surface disturbance will occur to access Federal minerals.

| Resources/Actions for Review That May Affect T&E Species | Authority (Ohio DNR/BLM/FWS) | AMM (Stipulations to Leases and APDs as specified in BA (Appendix G of the EA)), site specific determinations | Specific AMMs |
|---|---|---|---|
| Disturbance - Noise | BLM/ODNR | <u>Already disturbed surface:</u> All Necessary State Permits; Bat AMM 6 | 6. Restrict activities that may create vibrations or increase noise levels at a hibernaculum from April 1 to September 30 within 0.5 miles of identified hibernaculum, or at any distance throughout the year that would threaten the structural integrity of an occupied hibernaculum. Such activities may include blasting, pile driving, hydraulic drilling, and similar geotechnical activities. |
| Vegetation and Rare Plants, including suitable habitat, spread of invasive species and site remediation | BLM/ODNR | <u>Already disturbed surface:</u> All Necessary State Permits; Plant AMMs 2, 3, 5; Monarch AMMs 1, 2 (mowing), 3 | **Plant AMMs**<br><br>2. The applicant or BLM will conduct a desktop analysis to determine if potentially suitable habitat for plant species is present. Desktop analysis should include mapping of habitat types in the area, review of soils/geology in the area, and review of aerial maps to see if the area is within a completely closed forest. If the project area is entirely mowed lawn or is entirely developed (such as parking lot, buildings) then |

DOI-BLM-Eastern States-M000-2026-0005-CE

20

| Resources/Actions for Review That May Affect T&E Species | Authority (Ohio DNR/BLM/FWS) | AMM (Stipulations to Leases and APDs as specified in BA (Appendix G of the EA)), site specific determinations | Specific AMMs |
|---|---|---|---|
| | | | the project would have no effect to listed plant species. USFWS will review the desktop analysis to determine if it is acceptable and then provide guidance on whether a presence/absence plant survey is needed when BLM requests Tier 2 consultation.<br><br>3. If Federally listed plants are present onsite, BLM will coordinate with USFWS during Tier 2 consultation to develop a protective buffer to avoid adverse effects to these species.<br><br>5. Revegetate disturbed areas with a mix of noninvasive annual ground cover and perennial native species that has been approved by USFWS.<br><br>**Monarch AMMs**<br><br>1. In appropriate habitat locations, milkweed and other monarch preferred forb species will be included in the seed mix for habitat restoration or creation to provide for monarch butterfly larval habitat during early successional Stages, or as directed by the USFWS.<br><br>2. Prohibit mowing monarch habitat from March 15 to August 31 when monarchs are breeding and avoid mowing of |

DOI-BLM-Eastern States-M000-2026-0005-CE                                          21

| Resources/Actions for Review That May Affect T&E Species | Authority (Ohio DNR/BLM/FWS) | AMM (Stipulations to Leases and APDs as specified in BA (Appendix G of the EA)), site specific determinations | Specific AMMs |
|---|---|---|---|
| | | | blooming habitat September 1 to October 31 when large numbers of monarchs are migrating.<br><br>3. Prohibit the use of terrestrial pesticides or herbicides in and within 100 feet of monarch habitat from March 15 to October 30. |
| Tree Clearing/Cutting Terrestrial Species/Bats | BLM/FWS | Already disturbed surface: All Necessary State Permits; Bat AMMs 3, 5, 6, 7 | 3. Require a closed system for the containment of produced water from drilling and all applicable local, state, and Federal regulations apply for the appropriate disposal of produced water. Restrict the total removal of forest habitat to no more than 105 acres of deciduous forest annually and 1,015 acres total over the term of the consultation (55 years).<br><br>5. Restrict the cumulative removal of forest habitat to no more than 105 acres of deciduous forest (trees greater than 5 inches DBH) annually and 1,015 acres total over the 55-year term of the consultation.<br><br>6. Restrict activities that may create vibrations or increase noise levels at a hibernaculum from April 1 to September 30 within 0.5 miles of identified hibernaculum, or at any distance throughout the year that would threaten the structural integrity of an |

| Resources/Actions for Review That May Affect T&E Species | Authority (Ohio DNR/BLM/FWS) | AMM (Stipulations to Leases and APDs as specified in BA (Appendix G of the EA)), site specific determinations | Specific AMMs |
|---|---|---|---|
| | | | occupied hibernaculum. Such activities may include blasting, pile driving, hydraulic drilling, and similar geotechnical activities.<br><br>7. For any known Indiana, northern long-eared, or tricolored bat roost trees, prohibit year-round removal of the roost and any tree within 150 feet until the roost is deemed unsuitable in coordination with FWS. Additionally, for known maternity roosts, establish a 0.25-mile roost area buffer centered on the original roost location. Tree cutting and removal will also be prohibited year-round within the established buffer, until such time that FWS agrees it is no longer an occupied roost area, or sufficient alternate avoidance and minimization measures to protect the colony can be applied in coordination with FWS prior to approval of the APD. |
| Water Quantity (withdrawal) | BLM/ODNR/FWS | <u>Already disturbed surface:</u> All Necessary State or Federal Permits; Aquatic AMMs 5, 6, 7, 9 | 5. The BLM will prohibit water withdrawals from Little Muskingum River, Muskingum River (these are the Group 2 and 4 streams that currently occur within the Action Area), and any additional Group 2 and 4 streams and eastern hellbender streams that may |

| Resources/Actions for Review That May Affect T&E Species | Authority (Ohio DNR/BLM/FWS) | AMM (Stipulations to Leases and APDs as specified in BA (Appendix G of the EA)), site specific determinations | Specific AMMs |
|---|---|---|---|
| | | | be identified in the future.<br><br>6. BLM will encourage the use of recycled water to minimize the amount of water withdrawals from surface sources.<br><br>7. BLM will track annual water withdrawal from all surface water sources used to support development of leases issued under the Proposed Action to confirm withdrawals do not exceed the limits expected and analyzed.<br><br>9. BLM will require monitoring of stream flow to confirm that it is maintained at a level to maintain aquatic functions as required by USFWS at the tier 2 review Stage. |
| Water Quality (Mussels/Eastern hellbender) | BLM/ODNR/FWS | <u>Already disturbed surface:</u> All Necessary State or Federal Permits; Aquatic AMMs 1, 3, 4, 8 | 1. Prohibit in-water work in Group 2 and 4 mussel streams (currently identified in Appendix A of the 2024, or most recent version, of the Ohio Mussel Survey Protocol and hereafter identified as "mussel streams") as well as eastern hellbender streams. If in-stream work is proposed within a mussel stream, mussel surveys would be required using the FWS-approved mussel survey methodology from the most recent version of the Ohio |

| Resources/Actions for Review That May Affect T&E Species | Authority (Ohio DNR/BLM/FWS) | AMM (Stipulations to Leases and APDs as specified in BA (Appendix G of the EA)), site specific determinations | Specific AMMs |
|---|---|---|---|
| | | | Mussel Survey Protocol. If in-stream work is proposed within an eastern hellbender stream, a survey in coordination with FWS would be required. 3. Establish 300-foot no-disturbance buffers along each side of mussel or eastern hellbender streams (no access roads within this buffer). BLM will prohibit the use of brine on roads for dust and ice control within 1,000 feet of a mussel or eastern hellbender stream. 4. BLM will require the use of best management practices (BMPs) for construction of access roads. 8. BLM will prohibit the use of brine on roads for dust and ice control within 1,000 feet of a mussel or eastern hellbender stream. BLM will require safe disposal of brine in accordance with state requirements. |

**Attachment 4: Ohio SHPO Concurrence Letter**



In reply refer to:
2026-MOE-67777

April 6, 2026

Wesley R. Willoughby, PhD, RPA
Archaeologist
Bureau of Land Management
Northeastern States District
250 E. Wisconsin Avenue, Suite 1100
Milwaukee, WI 53202-4617
Email: wwilloughby@blm.gov

RE: Section 106 Review – Proposed BLM Approval of Three Applications for Permit to Drill from
    Expand Energy LLC: Wells Herrick X-M MNR 2HM, 4HM, and 10HM, Lee Township, Monroe
    County, Ohio

Dear Dr. Willoughby:

This letter is in response to the correspondence received on March 9, 2026, regarding the above-referenced project in Monroe County, Ohio. We appreciate the opportunity to comment on this project. The comments of the Ohio State Historic Preservation Office (SHPO) are made pursuant to Section 149.53 of the Ohio Revised Code (O.R.C.) requesting cooperation among state agencies in the preservation of historic properties. The comments of the Ohio SHPO are also submitted in accordance with the provisions of Section 106 of the National Historic Preservation Act of 1966, as amended (54 U.S.C. 306108 [36 CFR 800]). The Bureau of Land Management (BLM) Northeastern States District Office (NSDO) is the lead federal agency for the undertaking.

According to the information submitted, Expand Energy LLC has submitted three Applications for Permit to Drill (APDs) for new wells within the existing Herrick Well Pad facility. No ground disturbance outside of the current well pad facility will occur. A review of our files indicates no historic properties, districts, previously recorded archaeological sites, above-ground resources, or cultural resource surveys within or adjacent to the existing well pad facility. Therefore, the SHPO concurs with the BLM-NSDO's No Historic Properties Affected determination. No further coordination is required for the project unless the scope of work changes or archaeological remains are discovered during the course of the project. In such a situation, this office should be contacted as required by 36 CFR § 800.13. If you have any questions concerning this review, please contact me via email at sbiehl@ohiohistory.org. Thank you for your cooperation.

Sincerely,

Stephen M. Biehl, Project Reviews Manager-Archaeology
Resource Protection and Review
State Historic Preservation Office

RPR Serial No. 1113146

800 E. 17th Ave., Columbus, OH 43211-2474 • 614.297.2300 • ohiohistory.org

DOI-BLM-Eastern States-M000-2026-0005-CE

26

**Attachment 5: Streamlined Biological Evaluation and Tier 2 Consultation Form**

### Streamlined Biological Evaluation and Tier 2 Consultation Form
### for the Bureau of Land Management Lease of federal Oil/Gas on the
### Marietta Unit of the Wayne National Forest (v. 04/09/2026)

The Bureau of Land Management (BLM) will initiate a Tier 2 informal consultation for all projects proposed under the April 2025, Programmatic Informal Conference and Consultation (PICC). The individual project reviews will rely on the analyses completed for the Project as outlined in the Biological Assessment and the PICC. The BLM and the U.S. Fish and Wildlife Service (USFWS) have established a streamlined consultation process for Tier 2 projects utilizing the process and forms provided below.

Process Overview
Step 1: The BLM will provide the following information necessary to complete this Tier 2 form: **Block 1)** location and concise description of the Tier 2 proposed action; **Block 2)** determination of effects for federally listed species; **Block 3)** relevant required avoidance and minimization measures (AMMs); and **Block 4)** a cumulative, programmatic reporting of deciduous forest removal, and water withdrawal if applicable. Further, the BLM information will be supported by an appended proposed action summary, maps, and relevant survey summaries. Projects that are in the same proximity or that use the same access route may be batched together and completed on one form. A project code must be obtained through the online Information Planning and Consultation (IPaC) system.

Step 2: The BLM submits the completed information to USFWS with the Tier 2 project request for informal consultation. The USFWS shall respond with an email stating that either (1) information is complete, or (2) more information is needed for consultation.

Step 3: The USFWS ensures the Tier 2 project adheres to the PICC and completes the form for an informal consultation. This Tier 2 consultation will be sent to the BLM upon completion.

DOI-BLM-Eastern States-M000-2026-0005-CE                                        27

## 1. BLM PROPOSED PROJECT INFORMATION

| | | | |
|---|---|---|---|
| Project Name: Herrick APDs | | | |
| Date: | 4/9/2026 | Project code from IPaC: | 2026-0056744 |
| County: | Monroe | Township: | Lee (2N, R4W, S16) |
| Lat (DD.ddd): | 39.645635 | Lon (-DD.ddd): | -80.966761 |
| Limits of disturbance (in acres): | 2.34 | | |

Project information includes a review to determine if any caves or abandoned mines are within the project area using the Ohio Mine viewer available at:
https://gis.ohiodnr.gov/MapViewer/?config=OhioMines or other reliable source    Yes: ■    No: ☐

| | |
|---|---|
| Acres of young forest (trees less than 5 inches DBH) to be removed: | 0 |
| Acres+ of mature forest (trees greater than 5 inches DBH) to be removed/ or were estimated to be removed++: | 0 |
| Number of well pads proposed/or will be utilized to access fed minerals: | 1 |
| Number of wells proposed for drilling/or will be used to access fed minerals: | 3 |
| Gallons of surface water that will be withdrawn to initiate or enhance well production: | 48.2 Mgal |

+ Acres will be rounded up to the next tenth of an acre. Removal of 7-11 trees, would be considered 0.1 acre. Removal of 6 or fewer trees is considered de minimis impacts.

++ Projects that resulted in disturbance prior to APD and federal involvement (Situations 1 and 2 of the PIM) in which the amount of tree removal is not precisely known, will use an estimate based on the average amount of ground disturbance for pad construction.

**Proposal will follow (Situations modified from Permanent Instruction Memorandum 2018-014):**

- ☒ **Situation 1:** Use existing well pad and infrastructure (no new surface disturbance will occur)
- ☐ **Situation 2:** Require additional disturbance on private surface (some disturbance has occurred, but additional disturbance will occur)
- ☐ **Situation 3:** Require all new disturbance on private surface (no disturbance has occurred onsite)
- ☐ **Situation 4:** Will require disturbance to federally managed surface (Wayne National Forest) and is consistent with current WNF Forest Plan

☑ All proposed actions for the listed project are consistent with the overall proposed action in the biological assessment and PICC.

☑ Proposed action, maps, and relevant survey summaries are appended to this form.

**2. EFFECTS DETERMINATIONS**

■ All effects are consistent with the analysis in the PICC and biological assessment. (This is a required statement to use this form.)

| Species | CHOOSE ONLY ONE (X): | | |
|---|---|---|---|
| | No Effect^ | Not Likely to Adversely Affect | No Jeopardy |
| Indiana bat | x | | |
| Northern long-eared bat | x | | |
| Tricolored bat | | | |
| Clubshell mussel | | | |
| Fanshell mussel | | | |
| Longsolid mussel | | x | |
| Northern riffleshell | | | |
| Pink mucket | | | |
| Purple cat's paw | | | |
| Rabbitsfoot mussel | | | |
| Round hickorynut | | x | |
| Salamander mussel | | x | |
| Sheepnose mussel | | | |
| Snuffbox mussel | | | |
| Northern monkshood | | | |
| Small whorled pogonia | | | |
| Virginia spiraea | | | |
| Eastern Hellbender | | | |
| Monarch Butterfly | | | x |

^ A No Effect determination does not require USFWS concurrence.

* No Jeopardy determination is made for species not currently listed but have been proposed for listing.

DOI-BLM-Eastern States-M000-2026-0005-CE                    29

The AMMs listed below are a summary of those to be implemented by the applicant, precise explanation is described in the 2025 Wayne National Forest Oil and Gas Leasing Biological Assessment. Additional AMMs, such as tracking of impacts, are to be implemented by the BLM and are not listed below. Under the PICC all AMM's (both those implemented by the applicant and the BLM) are to be implemented.

| 3. REQUIRED AVOIDANCE AND MINIMIZATION MEASURES |
| --- |
| This proposal adheres to all AMMs intended to provide for the protection of federally listed species. |
| Mark the first box if condition exists and corresponding measure will be applied, or mark the "not applicable" box: |
| **3a. WILDLIFE** |
| ☐ Project site occurs on the surface of the Wayne National Forest: All standards and guidelines from the 2006 Forest Plan will be implemented.                           ☑ Not Applicable |
| ☐ All trees greater than 3 inches diameter at breast height (DBH) will be cleared between (October 1 to March 31). 2.6.1.1.1                           ☑ No tree clearing will occur |
| ☐ Project site is outside any buffer of a known Indiana and northern long-eared bat hibernation and fall swarming site: Site will require 10 acres or less of mature tree (greater than 5 inches DBH) clearing and all tree clearing will occur between October 1 and March 31. 2.6.1.1.2                           ☐ Not Applicable |
| ☑ Project site will utilize a closed system for the containment of produced water. 2.6.1.1.3                           ☐ Not Applicable |
| ☐ Project site is within ¼ mile of known Indiana and/or northern long-eared bat hibernation and fall swarming sites: No tree clearing will occur. 2.6.1.1.4                           ☑ Not Applicable |
| ☐ Project site is within a buffer of a known Indiana and northern long-eared bat hibernation and fall swarming site, but it's further than ¼ mile from the hibernation or swarming site and all tree clearing will occur between November 15 and March 15. 2.6.1.1.4                           ☑ Not Applicable |
| ☐ Project site is within ½ mile of a known Indiana bat or northern long-eared bat hibernaculum or swarming site activities that may create vibrations or increase noise levels at a hibernaculum. These activities (including: blasting, pile driving, hydraulic drilling, and similar geotechnical activities) will only occur during the summer from April 1 to September 30. 2.6.1.1.6                           ☑ Not Applicable |
| ☐ Project site is within ¼ mile of a known roost of the Indiana, northern long-eared, or tricolored bat and BLM will prohibit year-round removal of the roost and any tree within 150 feet until the roost is deemed unsuitable in coordination with USFWS. Additionally, for known maternity roosts, establish a 0.25-mile roost area buffer. Tree cutting and removal is prohibited year-round within the established buffer, until such time that USFWS agrees it is no longer an occupied roost area, or sufficient alternate avoidance and minimization measures to protect the colony can be applied in coordination with USFWS. 2.6.1.1.7                           ☑ Not Applicable |
| ☐ Project will require in-water work within a group 2 or 4 stream, or an eastern hellbender stream: a mussel survey has been conducted according to the Ohio Mussel Survey Protocol and no federally-listed mussels were identified (if federally-listed mussels were identified then consultation outside of this programmatic may need to occur) and/or a survey for the eastern hellbender was conducted and no individuals were identified. 2.6.1.2.1                           ☑ No in-water work will occur |

☐ Project site is within 1,000 feet of a group 2 or 4 stream, or an eastern hellbender stream: No well pads or excavated reservoirs will occur within 1,000 feet of any federally-listed mussel stream or eastern hellbender stream **and** a 300-foot no disturbance buffer will be established on each side of the stream. 2.6.1.2.2 and 2.6.1.2.3          ▣ Not Applicable

☐ Project will require the use of BMPs for construction of access roads. 2.6.1.2.4
                                                           ▣ No access roads will be constructed

▣ Project will prohibit any water withdrawal from the Little Muskingum River and Muskingum River and any additional Group 2 and 4 streams and eastern hellbender streams that may be identified in the future. 2.6.1.2.5          ☐ No surface water withdrawal is needed

☐ Project will prohibit the use of brine on roads for dust and ice control within 1,000 feet of a Group 2 and 4 streams and eastern hellbender streams. 2.6.1.2.8          ▣ Not Applicable

☐ Project will require the incorporation of milkweed for seed mixes to revegetate areas that receive full sun or partial sun. 2.6.1.3.1          ▣ No revegetation required

▣ Project will prohibit impacts to monarch breeding habitat (prairie or grassland) from March 15 to August 31. 2.6.1.3.2          ☐ Not Applicable

▣ Project will prohibit impacts to monarch migratory habitat (blooming prairie or grassland) from September 1 to October 30. 2.6.1.3.2          ☐ Not Applicable

▣ Project will prohibit the use of terrestrial pesticides or herbicides in and within 100 feet of monarch habitat from March 15 to October 30. 2.6.1.3.3          ☐ Not Applicable

### 3b. BOTANY

▣ Project avoids suitable habitat for Virginia spiraea and northern monkshood. 2.6.1.4.1
                              ☐ Project site contains suitable habitat for VS and NMH

▣ A plant habitat assessment (desktop survey) has been conducted for federally listed plants. USFWS has reviewed the habitat assessment and agrees that a presence/absence survey is not necessary. 2.6.1.4.2

☐ Project site contains suitable habitat and a presence/absence survey has been conducted and no federally listed plants were identified. 2.6.1.4.2

☐ Federally listed plants were identified and a suitable buffer has been established, as recommended by USFWS, to avoid adverse effects to these species. 2.6.1.4.3

▣ To reduce the likelihood of introductions and invasions of non-native invasive plant species, it is **required** that equipment be cleaned of all vegetation debris and soil before entering the project area. In this case, equipment refers to all wheeled or tracked equipment such as bulldozers, skid- steers, excavators, and all-terrain vehicles (ATV)/utility terrain vehicles (UTV). Equipment that leaves the action area must arrive clean before it can be used again. 2.6.1.4.3          ☐ Not Applicable

▣ Project will revegetate disturbed areas with a mix of non-invasive annual ground cover and perennial native species that has been approved by USFWS. 2.6.1.4.5          ☐ Not Applicable

**BLM REQUEST (choose all that apply):**
- ☐ Project review
- ☒ Informal (Tier 2 concurrence request)

If all required avoidance and minimization measures are incorporated, it results in a Not Likely to Adversely Affect determination and informal consultation.

The BLM is responsible for annual, cumulative tallying of deciduous tree removal, the number of wells drilled, well pads constructed, and gallons of water withdrawn from surface sources. Should the maximum levels of disturbance as identified in the BA and 2020 RFDS be reached, reinitiation of consultation under the Endangered Species Act may be required.

**BLM Biologist:** NICOLE CARTER
Digitally signed by NICOLE CARTER
Date: 2026.04.09 14:11:21 -05'00'

**Date:** 4/9/26

DOI-BLM-Eastern States-M000-2026-0005-CE

32

## FISH & WILDLIFE SERVICE INFORMAL CONSULTATION RESPONSE

Project Number:

FWS consultation begins once all necessary information is received. **Choose all that apply:**

☐ Needs additional information. Date **email sent:**      **Notes:**

☐ Acknowledges sufficient information is received for processing. **Email sent:**      Notes:

When there is sufficient information:

☐ Concurs with not likely to adversely affect determinations and application of conservation measures above for the following species: USFWS will list species here.

The FWS has reviewed the effects of the proposed tier 2 Project(s), which includes BLM's commitment to implement the avoidance and minimization measures as described in the Biological Assessment and identified, as applicable, in Block 3 above.

**Total impacts analyzed under programmatic consultation**

| | |
|---|---|
| Total amount of short-term forest impacts anticipated (in acres) over 55 years: | 1,015 |
| Cumulative total of forest removal (incudes mature trees and trees < 5 inches DBH) consulted on as of this date (in acres): | X |
| Forest removal (incudes mature trees and trees < 5 inches DBH) proposed for removal under this project (in acres): | X |
| Total acreage of short-term forest impacts under the PICC: | X |
| | |
| Total amount of long-term forest impacts anticipated (in acres) over 55 years: | 285 |
| Total acreage of forest removal that will be reclaimed as forest (including current project): | X |
| | |
| Total number of well pads anticipated to be constructed over 55 years: | 29 |
| Cumulative total number of well pads consulted on as of this date: | X |
| Number of well pads proposed for construction under this project: | X |
| | |
| Total number of wells anticipated to be drilled over 55 years: | 81 |
| Cumulative total number of wells consulted on as of this date: | X |
| Number of wells proposed for drilling under this project: | X |
| | |
| Total gallons of surface water removal anticipated over 55 years: | 2,187 Mgal |
| Cumulative total gallons of surface water removal anticipated: | X |
| Gallons of surface water proposed for removal under this project: | X |
| | |
| Total gallons of surface water removal expected per year: | 162 Mgal |
| Total acreage of forest removal expected per year: | 105 |

7

DOI-BLM-Eastern States-M000-2026-0005-CE      33

We confirm this Tier 2 Project is consistent with the scope and analysis as described in the PICC, and that the project is not likely to adversely affect the following species:

| Species | | Species |
|---|---|---|
| Indiana bat | | Rabbitsfoot mussel |
| Northern long-eared bat | | Salamander mussel |
| Tricolored bat | | Sheepnose mussel |
| Clubshell mussel | | Snuffbox mussel |
| Fanshell mussel | | Eastern hellbender |
| Longsolid mussel | | Monarch butterfly |
| Northern riffleshell | | Northern monkshood |
| Pink mucket | | Small whorled pogonia |
| Purple cat's paw | | Virginia spiraea |
| Round hickorynut | | |

Cumulative Total of Impacts Consulted on Under the PICC Including Current Project Impacts

| Impacts | Limit | Consulted on | Remaining |
|---|---|---|---|
| Short-term forest impacts (in acres): | 1, 015 | X | X |
| Long-term forest impacts (in acres): | 285 | X | X |
| Number of well pads: | 29 | X | X |
| Number of wells: | 81 | X | X |
| Gallons of surface water removed (in Mgal) | 2,187 | X | X |

We have evaluated suitable deciduous tree removal associated with the proposed Tier 2 Project. As described in the PICC the acreage of deciduous forest removal will be tracked to monitor the potential impacts to Indiana bats and/or northern long-eared bats. At this time a total of X acres of forest habitat removal (including this project) have been consulted on since the PICC was completed in April 2025. In addition, the amount of surface water removal from the Project Area will be tracked to monitor the potential water quality and quantity impacts.

The number of well pads or wells proposed under this project is within the threshold of impacts analyzed under the PICC.

This concludes informal consultation, as required by section 7(a)(2) of the Endangered Species Act, on the Tier 2 Project addressed in this consultation form. If, during the term of this action, additional information on listed or proposed species or their critical habitat become available, if a proposed species becomes officially listed, or if new information reveals effects of the action that were not previously considered, BLM consultation with the USFWS should be reinitiated to assess whether the determinations are still valid.

**FWS Reviewing Biologist:** _____ **Date:** _____

8

**Attachment 6: U.S. Fish & Wildlife Service Concurrence Letter**

### FISH & WILDLIFE SERVICE INFORMAL CONSULTATION RESPONSE

Project Number: 2026-0056744

FWS consultation begins once all necessary information is received. **Choose all that apply:**

☐ Needs additional information. Date **email sent:**          Notes:
☒ Acknowledges sufficient information is received for processing. **Email sent: 4/10/2026 Notes:**

When there is sufficient information:

☒ Concurs with not likely to adversely affect  and no jeopardy determinations and application of conservation measures above for the following species:
**Longsolid mussel**
**Round hickorynut**
**Salamander mussel**
**Monarch Butterfly**

The FWS has reviewed the effects of the proposed tier 2 Project(s), which includes BLM's commitment to implement the avoidance and minimization measures as described in the Biological Assessment and identified, as applicable, in Block 3 above.

**Total impacts analyzed under programmatic consultation**

| | |
|---|---|
| Total amount of short-term forest impacts anticipated (in acres) over 55 years: | 1,015 |
| Cumulative total of forest removal (incudes mature trees and trees < 5 inches DBH) consulted on as of this date (in acres): | 0 |
| Forest removal (incudes mature trees and trees < 5 inches DBH) proposed for removal under this project (in acres): | 0 |
| Total acreage of short-term forest impacts under the PICC: | 0 |
| | |
| Total amount of long-term forest impacts anticipated (in acres) over 55 years: | 285 |
| Total acreage of forest removal that will be reclaimed as forest (including current project): | 0 |
| | |
| Total number of well pads anticipated to be constructed over 55 years: | 29 |
| Cumulative total number of well pads consulted on as of this date: | 0 |
| Number of well pads proposed for construction under this project: | 0 |
| | |
| Total number of wells anticipated to be drilled over 55 years: | 81 |
| Cumulative total number of wells consulted on as of this date: | 0 |
| Number of wells proposed for drilling under this project: | 3 |
| | |
| Total gallons of surface water removal anticipated over 55 years: | 2,187 Mgal |
| Cumulative total gallons of surface water removal anticipated: | 0 |
| Gallons of surface water proposed for removal under this project: | 48.2 |
| | |
| Total gallons of surface water removal expected per year: | 162 Mgal |
| Total acreage of forest removal expected per year: | 105 |

7

We confirm this Tier 2 Project is consistent with the scope and analysis as described in the PICC, and that the project is not likely to adversely affect the following species:

| | Species | | | Species |
|---|---|---|---|---|
| | Indiana bat | | | Rabbitsfoot mussel |
| | Northern long-eared bat | X | | Salamander mussel |
| | Tricolored bat | | | Sheepnose mussel |
| | Clubshell mussel | | | Snuffbox mussel |
| | Fanshell mussel | | | Eastern hellbender |
| X | Longsolid mussel | X | | Monarch butterfly |
| | Northern riffleshell | | | Northern monkshood |
| | Pink mucket | | | Small whorled pogonia |
| | Purple cat's paw | | | Virginia spiraea |
| X | Round hickorynut | | | |

Cumulative Total of Impacts Consulted on Under the PICC Including Current Project Impacts

| Impacts | Limit | Consulted on | Remaining |
|---|---|---|---|
| Short-term forest impacts (in acres): | 1, 015 | 0 | 1, 015 |
| Long-term forest impacts (in acres): | 285 | 0 | 285 |
| Number of well pads: | 29 | 0 | 29 |
| Number of wells: | 81 | 3 | 78 |
| Gallons of surface water removed (in Mgal) | 2,187 | 48.2 | 2,138.8 |

We have evaluated suitable deciduous tree removal associated with the proposed Tier 2 Project. As described in the PICC the acreage of deciduous forest removal will be tracked to monitor the potential impacts to Indiana bats and/or northern long-eared bats. At this time a total of 0 acres of forest habitat removal (including this project) have been consulted on since the PICC was completed in April 2025. In addition, the amount of surface water removal from the Project Area will be tracked to monitor the potential water quality and quantity impacts.

The number of well pads or wells proposed under this project is within the threshold of impacts analyzed under the PICC.

This concludes informal consultation, as required by section 7(a)(2) of the Endangered Species Act, on the Tier 2 Project addressed in this consultation form. If, during the term of this action, additional information on listed or proposed species or their critical habitat become available, if a proposed species becomes officially listed, or if new information reveals effects of the action that were not previously considered, BLM consultation with the USFWS should be reinitiated to assess whether the determinations are still valid.

FWS Reviewing Biologist

JENNIFER FINFERA

Digitally signed by JENNIFER FINFERA
Date
Date: 2026.04.10 16:35:43 -04'00'

8

# Exhibit C

**Streamlined Biological Evaluation and Tier 2 Consultation Form
for the Bureau of Land Management Lease of federal Oil/Gas on the
Marietta Unit of the Wayne National Forest** (v. 04/09/2026)

The Bureau of Land Management (BLM) will initiate a Tier 2 informal consultation for all projects proposed under the April 2025, Programmatic Informal Conference and Consultation (PICC). The individual project reviews will rely on the analyses completed for the Project as outlined in the Biological Assessment and the PICC. The BLM and the U.S. Fish and Wildlife Service (USFWS) have established a streamlined consultation process for Tier 2 projects utilizing the process and forms provided below.

Process Overview
Step 1: The BLM will provide the following information necessary to complete this Tier 2 form: **Block 1)** location and concise description of the Tier 2 proposed action; **Block 2)** determination of effects for federally listed species; **Block 3)** relevant required avoidance and minimization measures (AMMs); and **Block 4)** a cumulative, programmatic reporting of deciduous forest removal, and water withdrawal if applicable. Further, the BLM information will be supported by an appended proposed action summary, maps, and relevant survey summaries. Projects that are in the same proximity or that use the same access route may be batched together and completed on one form. A project code must be obtained through the online Information Planning and Consultation (IPaC) system.

Step 2: The BLM submits the completed information to USFWS with the Tier 2 project request for informal consultation. The USFWS shall respond with an email stating that either (1) information is complete, or (2) more information is needed for consultation.

Step 3: The USFWS ensures the Tier 2 project adheres to the PICC and completes the form for an informal consultation. This Tier 2 consultation will be sent to the BLM upon completion.

1

| 1. BLM PROPOSED PROJECT INFORMATION | | | |
|---|---|---|---|
| Project Name: Herrick APDs | | | |
| Date: | 4/9/2026 | Project code from IPaC: | 2026-0056744 |
| County: | Monroe | Township: | Lee (2N, R4W, S16) |
| Lat (DD.ddd): | 39.645635 | Lon (-DD.ddd): | -80.966761 |
| Limits of disturbance (in acres): | | 2.34 | |
| Project information includes a review to determine if any caves or abandoned mines are within the project area using the Ohio Mine viewer available at: https://gis.ohiodnr.gov/MapViewer/?config=OhioMines or other reliable source    Yes: ■    No: ☐ | | | |
| Acres of young forest (trees less than 5 inches DBH) to be removed: | | | 0 |
| Acres+ of mature forest (trees greater than 5 inches DBH) to be removed/ or were estimated to be removed++: | | | 0 |
| Number of well pads proposed/or will be utilized to access fed minerals: | | | 1 |
| Number of wells proposed for drilling/or will be used to access fed minerals: | | | 3 |
| Gallons of surface water that will be withdrawn to initiate or enhance well production: | | | 48.2 Mgal |

+ Acres will be rounded up to the next tenth of an acre. Removal of 7-11 trees, would be considered 0.1 acre. Removal of 6 or fewer trees is considered de minimis impacts.

++ Projects that resulted in disturbance prior to APD and federal involvement (Situations 1 and 2 of the PIM) in which the amount of tree removal is not precisely known, will use an estimate based on the average amount of ground disturbance for pad construction.

**Proposal will follow (Situations modified from Permanent Instruction Memorandum 2018-014):**

- ☑ **Situation 1:** Use existing well pad and infrastructure (no new surface disturbance will occur)
- ☐ **Situation 2:** Require additional disturbance on private surface (some disturbance has occurred, but additional disturbance will occur)
- ☐ **Situation 3:** Require all new disturbance on private surface (no disturbance has occurred onsite)
- ☐ **Situation 4:** Will require disturbance to federally managed surface (Wayne National Forest) and is consistent with current WNF Forest Plan

☑ All proposed actions for the listed project are consistent with the overall proposed action in the biological assessment and PICC.

☑ Proposed action, maps, and relevant survey summaries are appended to this form.

2

**2. EFFECTS DETERMINATIONS**

☐ All effects are consistent with the analysis in the PICC and biological assessment. (This is a required statement to use this form.)

| Species | No Effect^ | CHOOSE ONLY ONE (X): | |
| --- | --- | --- | --- |
| | | Not Likely to Adversely Affect | No Jeopardy |
| Indiana bat | x | | |
| Northern long-eared bat | x | | |
| Tricolored bat | | | |
| Clubshell mussel | | | |
| Fanshell mussel | | | |
| Longsolid mussel | | x | |
| Northern riffleshell | | | |
| Pink mucket | | | |
| Purple cat's paw | | | |
| Rabbitsfoot mussel | | | |
| Round hickorynut | | x | |
| Salamander mussel | | x | |
| Sheepnose mussel | | | |
| Snuffbox mussel | | | |
| Northern monkshood | | | |
| Small whorled pogonia | | | |
| Virginia spiraea | | | |
| Eastern Hellbender | | | |
| Monarch Butterfly | | | x |

^ A No Effect determination does not require USFWS concurrence.

* No Jeopardy determination is made for species not currently listed but have been proposed for listing.

3

The AMMs listed below are a summary of those to be implemented by the applicant, precise explanation is described in the 2025 Wayne National Forest Oil and Gas Leasing Biological Assessment. Additional AMMs, such as tracking of impacts, are to be implemented by the BLM and are not listed below. Under the PICC all AMM's (both those implemented by the applicant and the BLM) are to be implemented.

| 3. REQUIRED AVOIDANCE AND MINIMIZATION MEASURES |
|---|
| This proposal adheres to all AMMs intended to provide for the protection of federally listed species. |
| Mark the first box if condition exists and corresponding measure will be applied, or mark the "not applicable" box: |

**3a. WILDLIFE**

☐ Project site occurs on the surface of the Wayne National Forest: All standards and guidelines from the 2006 Forest Plan will be implemented. ■ Not Applicable

☐ All trees greater than 3 inches diameter at breast height (DBH) will be cleared between (October 1 to March 31). 2.6.1.1.1 ■ No tree clearing will occur

☐ Project site is outside any buffer of a known Indiana and northern long-eared bat hibernation and fall swarming site: Site will require 10 acres or less of mature tree (greater than 5 inches DBH) clearing and all tree clearing will occur between October 1 and March 31. 2.6.1.1.2 ☐ Not Applicable

■ Project site will utilize a closed system for the containment of produced water. 2.6.1.1.3 ☐ Not Applicable

☐ Project site is within ¼ mile of known Indiana and/or northern long-eared bat hibernation and fall swarming sites: No tree clearing will occur. 2.6.1.1.4 ■ Not Applicable

☐ Project site is within a buffer of a known Indiana and northern long-eared bat hibernation and fall swarming site, but it's further than ¼ mile from the hibernation or swarming site and all tree clearing will occur between November 15 and March 15. 2.6.1.1.4 ■ Not Applicable

☐ Project site is within ½ mile of a known Indiana bat or northern long-eared bat hibernaculum or swarming site activities that may create vibrations or increase noise levels at a hibernaculum. These activities (including: blasting, pile driving, hydraulic drilling, and similar geotechnical activities) will only occur during the summer from April 1 to September 30. 2.6.1.1.6 ■ Not Applicable

☐ Project site is within ¼ mile of a known roost of the Indiana, northern long-eared, or tricolored bat and BLM will prohibit year-round removal of the roost and any tree within 150 feet until the roost is deemed unsuitable in coordination with USFWS. Additionally, for known maternity roosts, establish a 0.25-mile roost area buffer. Tree cutting and removal is prohibited year-round within the established buffer, until such time that USFWS agrees it is no longer an occupied roost area, or sufficient alternate avoidance and minimization measures to protect the colony can be applied in coordination with USFWS. 2.6.1.1.7 ■ Not Applicable

☐ Project will require in-water work within a group 2 or 4 stream, or an eastern hellbender stream: a mussel survey has been conducted according to the Ohio Mussel Survey Protocol and no federally-listed mussels were identified (if federally-listed mussels were identified then consultation outside of this programmatic may need to occur) and/or a survey for the eastern hellbender was conducted and no individuals were identified. 2.6.1.2.1 ■ No in-water work will occur

4

☐ Project site is within 1,000 feet of a group 2 or 4 stream, or an eastern hellbender stream: No well pads or excavated reservoirs will occur within 1,000 feet of any federally-listed mussel stream or eastern hellbender stream **and** a 300-foot no disturbance buffer will be established on each side of the stream. 2.6.1.2.2 and 2.6.1.2.3　■ Not Applicable

☐ Project will require the use of BMPs for construction of access roads. 2.6.1.2.4
　■ No access roads will be constructed

■ Project will prohibit any water withdrawal from the Little Muskingum River and Muskingum River and any additional Group 2 and 4 streams and eastern hellbender streams that may be identified in the future. 2.6.1.2.5　☐ No surface water withdrawal is needed

☐ Project will prohibit the use of brine on roads for dust and ice control within 1,000 feet of a Group 2 and 4 streams and eastern hellbender streams. 2.6.1.2.8　■ Not Applicable

☐ Project will require the incorporation of milkweed for seed mixes to revegetate areas that receive full sun or partial sun. 2.6.1.3.1　■ No revegetation required

■ Project will prohibit impacts to monarch breeding habitat (prairie or grassland) from March 15 to August 31. 2.6.1.3.2　☐ Not Applicable

■ Project will prohibit impacts to monarch migratory habitat (blooming prairie or grassland) from September 1 to October 30. 2.6.1.3.2　☐ Not Applicable

■ Project will prohibit the use of terrestrial pesticides or herbicides in and within 100 feet of monarch habitat from March 15 to October 30. 2.6.1.3.3　☐ Not Applicable

**3b. BOTANY**

■ Project avoids suitable habitat for Virginia spiraea and northern monkshood. 2.6.1.4.1
　☐ Project site contains suitable habitat for VS and NMH

■ A plant habitat assessment (desktop survey) has been conducted for federally listed plants. USFWS has reviewed the habitat assessment and agrees that a presence/absence survey is not necessary. 2.6.1.4.2

☐ Project site contains suitable habitat and a presence/absence survey has been conducted and no federally listed plants were identified. 2.6.1.4.2

☐ Federally listed plants were identified and a suitable buffer has been established, as recommended by USFWS, to avoid adverse effects to these species. 2.6.1.4.3

■ To reduce the likelihood of introductions and invasions of non-native invasive plant species, it is **required** that equipment be cleaned of all vegetation debris and soil before entering the project area. In this case, equipment refers to all wheeled or tracked equipment such as bulldozers, skid- steers, excavators, and all-terrain vehicles (ATV)/utility terrain vehicles (UTV). Equipment that leaves the action area must arrive clean before it can be used again. 2.6.1.4.3　☐ Not Applicable

■ Project will revegetate disturbed areas with a mix of non-invasive annual ground cover and perennial native species that has been approved by USFWS. 2.6.1.4.5　☐ Not Applicable

**BLM REQUEST (choose all that apply):**
- ☐ Project review
- ■ Informal (Tier 2 concurrence request)

If all required avoidance and minimization measures are incorporated, it results in a Not Likely to Adversely Affect determination and informal consultation.

The BLM is responsible for annual, cumulative tallying of deciduous tree removal, the number of wells drilled, well pads constructed, and gallons of water withdrawn from surface sources. Should the maximum levels of disturbance as identified in the BA and 2020 RFDS be reached, reinitiation of consultation under the Endangered Species Act may be required.

**BLM Biologist:** _____  **Date:** 4/9/26 _____

6

**FISH & WILDLIFE SERVICE INFORMAL CONSULTATION RESPONSE**

Project Number:

FWS consultation begins once all necessary information is received. **Choose all that apply:**

☐ Needs additional information. Date **email sent:**          **Notes:**
☐ Acknowledges sufficient information is received for processing. **Email sent:**          **Notes:**

When there is sufficient information:

☐ Concurs with not likely to adversely affect determinations and application of conservation measures above for the following species: USFWS will list species here.

The FWS has reviewed the effects of the proposed tier 2 Project(s), which includes BLM's commitment to implement the avoidance and minimization measures as described in the Biological Assessment and identified, as applicable, in Block 3 above.

**Total impacts analyzed under programmatic consultation**

| | |
|---|---|
| Total amount of short-term forest impacts anticipated (in acres) over 55 years: | 1,015 |
| Cumulative total of forest removal (incudes mature trees and trees < 5 inches DBH) consulted on as of this date (in acres): | X |
| Forest removal (incudes mature trees and trees < 5 inches DBH) proposed for removal under this project (in acres): | X |
| Total acreage of short-term forest impacts under the PICC: | X |
| | |
| Total amount of long-term forest impacts anticipated (in acres) over 55 years: | 285 |
| Total acreage of forest removal that will be reclaimed as forest (including current project): | X |
| | |
| Total number of well pads anticipated to be constructed over 55 years: | 29 |
| Cumulative total number of well pads consulted on as of this date: | X |
| Number of well pads proposed for construction under this project: | X |
| | |
| Total number of wells anticipated to be drilled over 55 years: | 81 |
| Cumulative total number of wells consulted on as of this date: | X |
| Number of wells proposed for drilling under this project: | X |
| | |
| Total gallons of surface water removal anticipated over 55 years: | 2,187 Mgal |
| Cumulative total gallons of surface water removal anticipated: | X |
| Gallons of surface water proposed for removal under this project: | X |
| | |
| Total gallons of surface water removal expected per year: | 162 Mgal |
| Total acreage of forest removal expected per year: | 105 |

7

We confirm this Tier 2 Project is consistent with the scope and analysis as described in the PICC, and that the project is not likely to adversely affect the following species:

| Species | Species |
|---|---|
| Indiana bat | Rabbitsfoot mussel |
| Northern long-eared bat | Salamander mussel |
| Tricolored bat | Sheepnose mussel |
| Clubshell mussel | Snuffbox mussel |
| Fanshell mussel | Eastern hellbender |
| Longsolid mussel | Monarch butterfly |
| Northern riffleshell | Northern monkshood |
| Pink mucket | Small whorled pogonia |
| Purple cat's paw | Virginia spiraea |
| Round hickorynut | |

Cumulative Total of Impacts Consulted on Under the PICC Including Current Project Impacts

| Impacts | Limit | Consulted on | Remaining |
|---|---|---|---|
| Short-term forest impacts (in acres): | 1, 015 | X | X |
| Long-term forest impacts (in acres): | 285 | X | X |
| Number of well pads: | 29 | X | X |
| Number of wells: | 81 | X | X |
| Gallons of surface water removed (in Mgal) | 2,187 | X | X |

We have evaluated suitable deciduous tree removal associated with the proposed Tier 2 Project. As described in the PICC the acreage of deciduous forest removal will be tracked to monitor the potential impacts to Indiana bats and/or northern long-eared bats. At this time a total of X acres of forest habitat removal (including this project) have been consulted on since the PICC was completed in April 2025. In addition, the amount of surface water removal from the Project Area will be tracked to monitor the potential water quality and quantity impacts.

The number of well pads or wells proposed under this project is within the threshold of impacts analyzed under the PICC.

This concludes informal consultation, as required by section 7(a)(2) of the Endangered Species Act, on the Tier 2 Project addressed in this consultation form. If, during the term of this action, additional information on listed or proposed species or their critical habitat become available, if a proposed species becomes officially listed, or if new information reveals effects of the action that were not previously considered, BLM consultation with the USFWS should be reinitiated to assess whether the determinations are still valid.

**FWS Reviewing Biologist:** _____ **Date:** _____

8